34 F.3d 51
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of
Citytrust, Plaintiff-Appellee,
v.
Joseph L. GIAMMETTEI; Dennis A. Moore; Russell A. Carlson;
Edward L. Varapapa; Patricia J. Sorrentino; Carlo
Centore; Rocco W. Iezzi; Patrick E. Patterson; James R.
Fitzpatrick; Walter W. Miner and John Iafolla, Defendants-Appellants.
 No. 1622, Docket 93-6235.
 United States Court of Appeals,
Second Circuit.
 Argued April 18, 1994.
Decided Aug. 24, 1994.
 
 Raymond A. Garcia, New Haven, CT (Garcia, Seeley & Associates, of counsel), for defendants-appellants.
 Richard E. Castiglioni, Stamford, CT (Diserio, Martin, O'Connor & Castiglioni, of counsel), for plaintiff-appellee.
 Before: OAKES, KEARSE and MAHONEY, Circuit Judges.
 OAKES, Senior Circuit Judge:
 
 
 1
 Eleven individual defendants, each a limited partner in the Northeastern Heritage Limited Partnership ("NHLP"), appeal from judgments of the District of Connecticut, Ellen Bree Burns, Judge, granting the motion of the plaintiff, the Federal Deposit Insurance Corporation ("FDIC"), for summary judgment and awarding damages in favor of the FDIC against each of the eleven individual defendants. We affirm.
 
 I. Background
 A. The Underlying Transaction
 
 2
 This litigation arose out of a real estate venture promoted by two individuals, Arnold Peck and Michael Belfonti. Peck and Belfonti formed NHLP and established themselves as general partners. NHLP was to purchase a 164-unit apartment complex in Vernon, Connecticut and convert the apartments into condominiums.
 
 
 3
 Peck and Belfonti promoted the partnership to prospective limited partners through a Private Placement Memorandum ("PPM") dated July 22, 1987. The PPM offered qualifying investors the opportunity to purchase "units" in NHLP. The purchase price of a unit was $50,000, payable with $1,100 in cash and a promissory note for the balance.[1] As Magistrate Judge F. Owen Eagan found,
 
 
 4
 [t]he notes were to be paid off in six annual installments of varying amounts, and the timing of the payments was to coincide with annual disbursements from the partnership to the limited partners, or with tax benefits which the limited partners were to receive.
 
 
 5
 Recommended Ruling on Plaintiff's Motions for Summary Judgment at 4-5, FDIC v. Giammettei, No. 5:91-CV-00490 (EBB) (D.Conn. July 22, 1992) ("Recommended Ruling"). The PPM further provided that Citytrust was to hold the notes, together with the down payments, in escrow pending approval of the limited partners. Upon approval of the limited partners, the notes were to be assigned to a financial institution to secure additional financing for NHLP.
 
 
 6
 Each of the eleven defendants purchased an interest in NHLP,[2] effectively becoming limited partners in NHLP. Peck and Belfonti assigned the notes to Citytrust as collateral for a $3,325,000 loan.
 
 
 7
 Despite the assurances in the PPM, no disbursements were ever made from NHLP to the limited partners. The limited partners made no payments on any of the notes, defaulting under the terms of the notes assigned to Citytrust. This litigation ensued.
 
 B. Procedural History
 
 8
 Citytrust commenced collection actions against each of the eleven defendants in Connecticut Superior Court in 1990. On December 20, 1990, the defendants filed identical answers, each raising eight affirmative defenses to liability for repayment of the debts evidenced by their promissory notes.
 
 
 9
 On August 9, 1991, the Commissioner of Banking of the State of Connecticut declared Citytrust insolvent and brought a petition in Superior Court for an order appointing the FDIC Receiver of Citytrust.[3] The FDIC accepted its appointment and, by operation of law, succeeded to all rights, titles, powers and privileges of Citytrust to Citytrust's assets, including its rights to collect on the promissory notes. 12 U.S.C. Sec. 1821(d)(2)(A)(i) (1988 & Supp. IV 1992). Pursuant to 12 U.S.C. Sec. 1819(b)(2)(A) and (B) (1988 & Supp. IV 1992), the FDIC moved on September 5, 1991, to remove each of the eleven collection actions to the United States District Court for the District of Connecticut. Also on that date, the FDIC moved for the substitution of the FDIC for Citytrust as plaintiff. The district court referred the case to Magistrate Judge F. Owen Eagan on September 30, 1991. Magistrate Eagan consolidated the eleven actions on June 2, 1992.
 
 
 10
 On July 22, 1992, Magistrate Eagan signed a Recommended Ruling on the FDIC's motion for Summary Judgment. On February 11, 1993--over an objection by the defendants and after appearances by counsel for the defendants and the FDIC regarding the recommended ruling--Judge Burns by endorsement approved the recommended ruling. The order granted summary judgment to the FDIC on each of the defendants' affirmative defenses and held that each of the defendants was liable to the FDIC for the debt evidenced by his or her promissory note. The order did not calculate damages, however. Final judgment was entered against all but one of the defendants on August 11, 1993, and against the remaining defendant two days later. This judgment resolved the precise amounts to be paid by each defendant to the FDIC. The defendants filed a timely joint notice of appeal on August 19, 1993.
 
 II. Jurisdiction
 
 11
 The district court had jurisdiction pursuant to 12 U.S.C. Sec. 1819(b)(2) and 28 U.S.C. Sec. 1331 (1988). This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1988).
 
 III. Discussion
 
 12
 A. Review of an Award of Summary Judgment Striking an Affirmative Defense
 
 
 13
 We review an award of summary judgment de novo. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994); Litton Indus. v. Lehman Bros. Kuhn Loeb Inc., 967 F.2d 742, 746 (2d Cir.1992). Thus, on appeal as well as in the district court, a movant for summary judgment "always bears" the burden of production or "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense--on which the defendant bears the burden of proof at trial--a plaintiff "may satisfy its Rule 56 burden by showing 'that there is an absence of evidence to support [an essential element of] the [non-moving party's] case.' " DiCola v. SwissRe Holding (North America), Inc., 996 F.2d 30 (2d Cir.1993) (quoting Celotex, 477 U.S. at 325, 106 S.Ct. at 2553-54) (brackets in original). While whatever evidence there is to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex, 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense "there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S.Ct. at 2552. In sum, we will affirm an award of summary judgment striking an affirmative defense if de novo review of the record in a light most favorable to the defendant reveals the absence of evidence supporting an essential element of the defense.
 
 
 14
 B. Legal Sufficiency of the Defendants' Affirmative Defenses
 
 
 15
 In D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court established a doctrine that precludes persons who have lent themselves "to a scheme or arrangement whereby the banking authority on which the [FDIC] relied in insuring the bank was or was likely to be misled," id. at 460, 62 S.Ct. at 680-81, from raising a defense to a collection action brought by the FDIC as the receiver of the failed bank based on the misleading scheme or arrangement. Congress codified the D'Oench, Duhme doctrine in Sec. 2(e) of the Federal Deposit Insurance Act, codified at 12 U.S.C. Sec. 1823(e) (1988). In Langley v. FDIC, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court considered the scope of the D'Oench, Duhme doctrine as codified at 12 U.S.C. Sec. 1823(e) and held that "[a] condition to payment of a note, including the truth of an express warranty, is part of the 'agreement' to which the writing, approval, and filing requirements of 12 U.S.C. Sec. 1823(e) attach." Id. at 96, 108 S.Ct. at 403; see also FDIC v. Bernstein, 944 F.2d 101, 108 (2d Cir.1991). In 1989, after the Supreme Court had decided Langley, Congress further enlarged the scope of the doctrine by amending Sec. 1823(e) to extend its protections to assets acquired by the FDIC through appointment as a receiver for an insolvent financial institution. Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), Pub.L. No. 101-73 at Sec. 217(4), 103 Stat. 183, 256 (1989). As amended, 12 U.S.C. Sec. 1823(e) provides:
 
 
 16
 No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement--
 
 
 17
 (1) is in writing,
 
 
 18
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 
 
 19
 (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 
 
 20
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
 
 
 21
 12 U.S.C. Sec. 1823(e) (1988 & Supp. IV 1992).
 
 
 22
 Through their answers, the eleven defendants interposed eight identical affirmative defenses. In brief, these are:
 
 
 23
 (1) breach of the Escrow Agreement;
 
 
 24
 (2) breach of the conditions of the PPM;
 
 
 25
 (3) common law fraud;
 
 
 26
 (4) violation of Section 5 of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. Sec. 77e (1988);
 
 
 27
 (5) violation of Section 12(2) of the 1933 Act, 15 U.S.C. Sec. 77l (1988);
 
 
 28
 (6) violation of Section 17(a) of the 1933 Act, 15 U.S.C. Sec. 77q (1988) and Rule 10b-5, promulgated under the Securities Act of 1934 and codified at 17 C.F.R. 240.10b-5 (1993);
 
 
 29
 (7) violation of the Connecticut Uniform Securities Act, Conn.Gen.Stat.Ann. Secs. 36-472 and -498(a) (West 1987 & Supp.1994); and
 
 
 30
 (8) violation of the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat.Ann. Sec. 42-110b (West 1992).
 
 
 31
 We now address these defenses to determine whether they are based upon an "agreement" subject to the requirements of Sec. 1823(e) and, if so, whether the "agreement" upon which they are based satisfies the requirements of Sec. 1823(e).1. Defenses Based upon Breach of the Escrow Agreement and the PPM
 
 
 32
 a. The Escrow Agreement
 
 
 33
 On its face, the Escrow Agreement fails to satisfy the requirements of 12 U.S.C. Sec. 1823(e). First, the Escrow Agreement has not been executed by the "person[s] claiming an adverse interest thereunder." The Escrow Agreement constituted an agreement "by and between Citytrust ... and Arnold Peck and Michael Belfonti ("General Partners"), general partners of [NHLP]." As such, it was naturally executed by Peck and Belfonti and an employee of Citytrust. None of the eleven defendants executed the Escrow Agreement. Contrary to the argument of the eleven defendants, execution of the Escrow Agreement by Peck and Belfonti does not satisfy the execution requirement with respect to each of the limited partners. The language of 12 U.S.C. Sec. 1823(e) is clear--the agreement must be "executed by the depository institution and any person claiming an adverse interest thereunder." See Twin Constr., Inc. v. Boca Raton, Inc., 925 F.2d 378, 384 (11th Cir.1991) (emphasis added). The purpose of the requirement is to ensure that bank officials examining the official records of the bank may easily identify any collateral agreement that may "diminish or defeat" the bank's interest in an asset. This purpose might well be defeated if a person could claim an adverse interest under an agreement that was signed by somebody else. Bank examiners could not be sure which, if any, assets would be "diminished or defeated" by the agreement unless they took the additional step of investigating on whose behalf the signatory of the agreement executed the document. See RTC v. Allen, 16 F.3d 568, 574-75 (4th Cir.1994).
 
 
 34
 The defendants argue that Peck and Belfonti, as general partners, had authority to sign documents on behalf of the partnership and the limited partners. But Peck and Belfonti could only have had such authority pursuant to another agreement--e.g., the Amended and Restated Northeastern Heritage Limited Partnership Agreement ("Partnership Agreement"), Article VIII, "Rights, Obligations and Representations of the General Partners." And the limited partners may not rely on that agreement to defeat or diminish the interest of the FDIC in an asset unless that agreement meets the requirements of 12 U.S.C. Sec. 1823(e). The Partnership Agreement, however, also fails on its face to meet these requirements. We find, therefore, that the execution of the Escrow Agreement by Peck and Belfonti fails to satisfy the requirement of 12 U.S.C. Sec. 1823(e) that the agreement be executed by a "person claiming an adverse interest thereunder."
 
 
 35
 Second, there is no evidence that the Escrow Agreement was "approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee." Execution of the Escrow Agreement by an employee of the bank, even if that employee had authority to bind the bank, does not satisfy this requirement. See FDIC v. Gardner, 606 F.Supp. 1484, 1488 (S.D.Miss.1985) (agreement between president of a bank and the maker of a note did not constitute specific approval by the board of directors of the bank or its loan committee even though bank president had full authority to execute the note). To hold otherwise would defeat one of the express purposes of the D'Oench Duhme doctrine--to prevent persons from colluding with bank employees to mislead bank examiners. See Langley, 484 U.S. at 92, 108 S.Ct. at 401-02 (contemporaneous execution and approval requirements "ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure"). In this case, although the loan from Citytrust to NHLP was approved by a duly authorized committee of directors, the Escrow Agreement itself was not. With respect to the Escrow Agreement itself, the most the defendants allege is that it was "referred to in the bank's meeting minutes of September 30, 1987." Appellants' Brief at 9. The fact that an agreement is part of a group of documents surrounding a transaction does not exempt that agreement from the categorical requirements of 12 U.S.C. Sec. 1823(e) even though the committee of directors referred to the agreement in approving the transaction itself. See FDIC v. O'Neil, 809 F.2d 350, 353-54 (7th Cir.1987); see also Beighley v. FDIC, 868 F.2d 776, 782 (5th Cir.1989); FSLIC v. Gemini Management, 921 F.2d 241, 244-45 (9th Cir.1990); FSLIC v. Two Rivers Assocs., 880 F.2d 1267, 1275-76 (11th Cir.1989).
 
 
 36
 There is no evidence that the Escrow Agreement satisfies the execution and approval requirements of 12 U.S.C. Sec. 1823(e). We therefore affirm the district court's award of summary judgment to the FDIC with respect to defenses based upon alleged breach of the Escrow Agreement.
 
 
 37
 b. Conversion in Violation of the Escrow Agreement
 
 
 38
 Similarly, the defendants' affirmative defense of conversion must fail. The defendants alleged that Citytrust converted the notes only in so far as it took possession of the notes in breach of the terms of the Escrow Agreement. Hence, the defendants may only raise the defense of conversion if the Escrow Agreement satisfies the requirements of 12 U.S.C. Sec. 1823(e). Because the Escrow Agreement does not satisfy these requirements, we therefore affirm the district court's award of summary judgment to the FDIC with respect to defenses based upon alleged conversion.
 
 
 39
 c. The PPM
 
 
 40
 The PPM fails, on its face, to satisfy the requirements of 12 U.S.C. Sec. 1823(e). First, neither Citytrust nor the defendants executed the PPM. As with the Escrow Agreement, execution of the PPM by Peck and Belfonti as general partners does not satisfy the execution requirement with respect to the eleven defendants as limited partners. Second, the defendants have not alleged that the PPM was approved by Citytrust's board of directors or its loan committee. Third, there is no evidence that the PPM has been maintained continuously from the date of its execution as a record of Citytrust. The defendants hope to avoid these deficiencies by arguing that the PPM was incorporated by reference into the Escrow Agreement. Defendant's Brief at 14. Even if incorporation by reference were sufficient to bring the terms of the PPM within the Escrow Agreement for the purposes of 12 U.S.C. Sec. 1823(e), however, the Escrow Agreement itself would still have to satisfy the categorical requirements of 12 U.S.C. Sec. 1823(e). As we discussed above, the Escrow Agreement does not meet those requirements. Accordingly, we affirm the district court's award of summary judgment to the FDIC with respect to defenses based upon alleged breach of the PPM.
 
 2. Defenses Based upon Fraud
 
 41
 In addition to the defenses of breach of the Escrow Agreement, conversion, and breach of the PPM, the defendants raised other affirmative defenses based on violations of the federal securities laws, the Connecticut Uniform Securities Act, the Connecticut Unfair Trade Practices Act, Connecticut common law fraud, and an implied covenant of good faith and fair dealing under Connecticut law. We must determine (1) whether these defenses render the notes void so as to remove the FDIC's interest from the protections of 12 U.S.C. Sec. 1823(e); (2) if not, whether these defenses are based upon an "agreement" within the meaning of 12 U.S.C. Sec. 1823(e); and (3) if so, whether the "agreement" upon which they are based meets the requirements of 12 U.S.C. Sec. 1823(e).
 
 
 42
 The Supreme Court, in Langley, suggested in dicta that there is a distinction between a defense of "fraud in the inducement," rendering the FDIC's interest "voidable," and a defense of "fraud in the factum," rendering the FDIC's interest "void." The Supreme Court then held that "voidable title is enough to constitute 'title or interest' in the note." Langley, 484 U.S. at 94, 108 S.Ct. at 402-03 (emphasis in original). In so doing, the Supreme Court suggested that a defense of fraud in the factum rendering the notes void would not be subject to the requirements of 12 U.S.C. Sec. 1823(e).
 
 
 43
 The defendants argue that because they were induced to execute the promissory notes by fraud in violation of federal securities laws, the promissory notes are void. As such, the defendants argue, no interest ever passed to Citytrust. Because Citytrust had no interest in the notes, defenses to a collection action based upon violation of the federal securities laws are not subject to the requirements of 12 U.S.C. Sec. 1823(e). Appellants' Brief at 17.
 
 
 44
 We reject this argument. The fraud alleged by the defendants constitutes fraud in the inducement, not fraud in the factum. As such, the defenses raised by the defendants render the notes voidable, not void. 15 U.S.C. Sec. 78cc(b) (1988 & Supp. IV 1992), relied on by the defendants, is not to the contrary. Although that section provides that "[e]very contract made in violation ... shall be void," 15 U.S.C. Sec. 78cc(b), courts have interpreted that section as establishing a rule of voidability, Reserve Life Ins. Co. v. Provident Life Ins. Co., 499 F.2d 715 (8th Cir.1974), cert. denied, 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 803 not as expanding the definition of fraud in the factum beyond "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." Langley, 484 U.S. at 93, 108 S.Ct. at 402. We find, therefore, that the rule of voidability set forth at 15 U.S.C. Sec. 78cc(b) does not remove defenses of fraudulent inducement in violation of federal securities laws from the scope of 12 U.S.C. Sec. 1823(e).
 
 
 45
 Having determined that none of the fraudulent inducement defenses removes the interests of the FDIC from the protections of 12 U.S.C. Sec. 1823(e), it remains to be determined whether the defenses themselves are based upon an "agreement" and, as such, are subject to the requirements of 12 U.S.C. Sec. 1823(e). As discussed above, the Supreme Court has interpreted the word "agreement" as used in 12 U.S.C. Sec. 1823(e) broadly. In Langley the Supreme Court held that agreement includes an implicit condition such as "the truthfulness of a warranted fact." As the Supreme Court wrote, "[n]o conceivable reading of the word 'agreement' in Sec. 1823(e) could cause it to cover a representation or warranty that is bona fide but to exclude one that is fraudulent." Langley, 484 U.S. at 93, 108 S.Ct. at 402.
 
 
 46
 Under Langley, defenses based on allegedly fraudulent representations and omissions are based on an agreement--an implicit warranty of good faith and fair dealing. As such, the defenses are subject to the requirements of 12 U.S.C. Sec. 1823(e). Id. at 96, 108 S.Ct. at 403; but see Kilpatrick v. Riddle, 907 F.2d 1523, 1529-33 (5th Cir.1990) (Brown, J., dissenting) (making the argument that D'Oench, Duhme should not preclude fraud defenses based on federal securities laws), cert. denied, 498 U.S. 1083, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991). Accordingly, we find that the defenses based on violations of federal securities laws are based upon an implied covenant not to violate these laws which is subject to the requirements of 12 U.S.C. Sec. 1823(e). See Krauss v. FDIC, 769 F.Supp. 519, 523 (S.D.N.Y.1991). Similarly, we find that the defenses based on common law fraudulent inducement, the Connecticut Uniform Securities Act and the Connecticut Unfair Trade Practices Act are based upon an implied covenant also subject to the requirements of 12 U.S.C. Sec. 1823(e). Because none of the implicit warranties upon which these defenses are based meet the requirements of 12 U.S.C. Sec. 1823(e), we affirm the district court's award of summary judgment to the FDIC with respect to these defenses.
 
 
 47
 3. Defenses Based upon Breach of an Implied Covenant of Good
 
 Faith and Fair Dealing
 
 48
 Finally, we find that the defenses based on "an implied covenant of good faith and fair dealing" under Connecticut law are within the scope of 12 U.S.C. Sec. 1823(e), as interpreted by Langley, 484 U.S. at 92-93, 108 S.Ct. at 401-02. If, as in Langley, an implicit covenant of truthfulness of a warranted fact constitutes an agreement under 12 U.S.C. Sec. 1823(e), an implicit covenant of "good faith and fair dealing" must also constitute an agreement. Sweeney v. RTC, 16 F.3d 1, 4-5 (1st Cir.1994) (per curiam) (holding that D'Oench Duhme doctrine bars borrowers' state law unfair trade practices claim against RTC). It is possible that a defense based upon breach of an implied covenant of good faith and fair dealing in the performance of obligations set forth in the note would not be subject to the requirements of 12 U.S.C. Sec. 1823(e). See Texas Refrigeration Supply, Inc. v. FDIC, 953 F.2d 975, 981 (5th Cir.1992) (holding that D'Oench Duhme doctrine does not preclude a defense of wrongful acceleration of debt and wrongful disposal of collateral). Where, however, the defense is raised on the theory that a depository institution breached a covenant of good faith and fair dealing while it "promoted, facilitated, consummated or otherwise acted in the sale, acquisition, promotion or closing of the NHLP transaction," Appellants' Brief at 16, we find that the covenant is subject to the requirements of 12 U.S.C. Sec. 1823(e).[4]
 
 
 49
 The defendants rely on two cases for the proposition that an implied covenant of good faith is not an "agreement" subject to the requirements of 12 U.S.C. Sec. 1823(e): FDIC v. P.P.S. Assocs., No. 5:91-CV-00518, 1992 WL 309929 (EBB), (D.Conn. Sept. 23, 1992) and Beitzell & Co. v. FDIC, 163 B.R. 637 (D.D.C.1993) (holding that D'Oench Duhme doctrine does not bar state law claim based on breach of an implied covenant of good faith and fair dealing). It is unclear from the decision in P.P.S. whether the defendants in that case claimed that the bank had breached an implied covenant of good faith and fair dealing in inducing the defendants to enter into the transaction or in performing its obligations under the note there at issue. Certainly, the authority relied upon by the court in P.P.S. concerns the implied covenant of good faith and fair dealing in the performance of the note. P.P.S. at 10 (citing Uniform Commercial Code Sec. 1-203 ("Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement"); Texas Refrigeration, 953 F.2d at 981 ("obligations about timely acceleration and the disposal of collateral are implicit in every promissory note")). The defendants in this case, however, allege not that Citytrust breached its obligations under the notes but that it breached its obligations in inducing them to execute the notes.[5] Therefore, if the defendants in P.P.S. alleged that the bank breached an implied covenant of good faith and fair dealing in the performance of its obligations under the note there at issue, then P.P.S. is distinguishable from this case. Beitzell is distinguishable for the same reason. If, however, the defendants in P.P.S. alleged the breach of an implied covenant of good faith and fair dealing in inducing the defendants to execute the note, we see no way of reconciling this holding with the Supreme Court's decision in Langley, 484 U.S. at 92-93, 108 S.Ct. at 401-02, and, of course, we are obliged to follow Langley.
 
 
 50
 We find, therefore, that a defense based on breach of an implied covenant of good faith and fair dealing in inducing the defendants to issue promissory notes must fail unless the implied covenant meets the requirements of 12 U.S.C. Sec. 1823(e). There is no evidence that these requirements were met. We therefore affirm the district court's award of summary judgment to the FDIC with respect to these defenses.
 
 IV. Conclusion
 
 51
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 Interest on the unpaid principal accrued at the annual rate of 9 percent
 
 
 [2]
 The defendants' individual interests in NHLP ranged from 1/2 unit to 2 units
 
 
 [3]
 This petition was brought pursuant to 12 U.S.C. Sec. 1821(c)(3) (1988 & Supp. IV 1992) and Title 36, Conn.Gen.Stat
 
 
 [4]
 The distinction between breach of an implied covenant of good faith and fair dealing in the performance of obligations that appear on the face of a note and breach of such a convenant with respect to the promotion of the note is supported by the rationale behind 12 U.S.C. Sec. 1823(e). 12 U.S.C. Sec. 1823(e) was designed to frustrate attempts to mislead bank examiners by subjecting collateral agreements that allegedly impose conditions on the realization of an asset to various categorical requirements. An agreement to perform the obligations set forth on the face of a note consistent with an implied covenant of good faith and fair dealing, however, poses no such risk of misleading bank examiners
 
 
 [5]
 To the extent that the defendants allege the breach of an implied covenant of good faith and fair dealing in the performance of obligations under the Escrow Agreement or the PPM, the defenses are barred because, as discussed above, neither the Escrow Agreement nor the PPM meets the requirements of 12 U.S.C. Sec. 1823(e)