George H. GOODHUE, Jr. and Maureen L. Shaw, Plaintiffs,

v.

Harry Michael JOCK, Individually, and d/b/a Jock's Construction; Federal Deposit Insurance Corporation, Receiver of Jefferson National Bank; Fred Dupee; Does 1–10, Defendants.

No. 92–CV–705.

United States District Court, N.D. New York.

June 22, 1995.

Thuillez, Ford, Gold & Conolly, Albany, NY (H. Neal Conolly, of counsel), for plaintiffs.

Hiscock & Barclay, Syracuse, NY (Richard K. Hughes, of counsel), for defendant FDIC, Receiver of Jefferson Nat'l Bank.

James A. Gosier, P.C., Syracuse, NY, for defendant, Dupee.

## MEMORANDUM DECISION & ORDER

HURD, United States Magistrate Judge.

This matter is before the court pursuant to the motion for summary judgment of defendant Federal Deposit Insurance Corporation Receiver of Jefferson National Bank ("FDIC"). Plaintiffs responded in opposition and no oral arguments were heard.

## FACTS

Defendant Harry Michael Jock, doing business as Jock's Construction ("Jock"), entered into a contract with the U.S. Department of Housing and Urban Development ("HUD"), administered by the Akwasasne [Indian Nation] Housing Authority, to construct forty homes on St. Regis Mohawk Reservation in September, 1988. Jock obtained several loans in order to finance the construction. Apparently the first such loan was for $100,-000.00 with Jefferson National Bank, Massena, New York ("JNB"), evidenced by a demand grid note[1] dated February 15, 1989. This note was secured by a $100,000.00 Certificate of Deposit ("CD") owned by the Housing Assistance Council ("HAC").

The second loan was for $100,000.00, also with JNB, and was evidenced by a demand grid note dated June 1, 1989. This loan was secured by a $100,000.00 CD in the name of the plaintiffs herein, George H. Goodhue, Jr. and Maureen L. Shaw.[2] This loan was to finance construction of 28 houses remaining to be built. It is this loan, the Goodhue/Shaw guarantee, and subsequent events relating to them, which are the subject of this lawsuit.

At the time the note was executed by Jock, Goodhue executed an Assignment of Certificate of Deposit and a Hypothecation Authorization. The Assignment provided that it "shall be effective for any renewals of above [$100,000] loan until same is entirely paid." (Dupee Dep. Ex.4.) The Hypothecation Authorization also provided that the collateral would secure extensions or renewals of Jock's Construction debt. (*See id.* Ex.5.) A promissory note was executed by Jock on June 1, 1989, providing for payment to Goodhue the principal sum of $100,000.00 due upon forfeiture of the CD held as security at JNB and providing leases on certain of Jock's land as security for the note. Also

executed on June 1, 1989, was a contract between Goodhue and Jock under which Goodhue provided security for Jock's JNB loan and Jock agreed to pay $1,000.00 for each house completed and to indemnify Goodhue for any amount of the CD forfeited to JNB.

On June 15, 1989, Jock executed another demand grid note in the amount of $150,-000.00. The June 15 note was secured by the $100,000.00 Goodhue/Shaw CD, and the June 1 note was marked "PAID BY RENEWAL." (*See id.* Ex.2.) Further, Goodhue executed another Hypothecation Agreement on June 15, 1989.

On July 4, 1989, Jock executed a promissory note in the amount of $32,000.00 payable to Goodhue. The final payment on that note was made sometime after July 17, 1989.

On August 8, 1989, Jock entered into a contract with Edward Kaneb, of Kaneb Corporation ("Kaneb"), under which Kaneb provided management of the construction of the remaining 24 houses and working capital for the project. The working capital was obtained via a demand grid note with JNB in the amount of $400,000.00 executed by Jock on August 9, 1989. The note was personally guaranteed by Kaneb. The contract required that Jock purchase all prefabricated houses from a certain builder owned by Kaneb, deposit all receipts into a construction account, and make disbursements from the construction account only with the signature of an authorized Kaneb agent.

The apparent effect of this provision was that Kaneb controlled all monies relating to the construction project. Kaneb authorized weekly draws from the account for expenses. As Jock completed houses and received payment from HUD, Kaneb apparently had discretion to allocate the funds in the construction account to loans and other outstanding payables such as subcontractors. In fact, the contract provided that "[a]ny such monies

---

1. A demand grid note provides a draw account for the maker, in this case Jock, up to the face amount of the note. As payments are made, additional draws also may be made, so long as the principal balance is at or below the face amount of the note.

2. The names as they appear on the CD are "George H. Goodhue, Jr. *or* Maureen L. Shaw."

The Goodhue/Shaw CD expired on December 1, 1989. At that time, the CD was made automatically renewable for successive seven-day periods. The original CD and the renewal CDs were issued with the same account number 3700009131. For ease of discussion in the remainder of this order, the original and renewal CDs will be referred to collectively as "the CD."

received ... [which] are deemed by the Kaneb Corporation to be over and above the amount necessary for weekly operating expenses, may at the discretion of Kaneb Corporation be used to offset monies outstanding on the line of credit established for this project...." (*Id.* Ex.35 ¶ 6.)

Other details and provisions of the above notes and contracts are not specifically related to the issues herein and therefore are not discussed. Furthermore, there may be other notes executed by Jock and/or Kaneb which are irrelevant here and are not discussed.

As of March 28, 1991, there was a balance due of $85,946.34 on the HAC $100,000.00 grid note. Jock was apparently in default on that note, having made no payments since November 1989. JNB applied $45,509.16 from the HAC CD to the Jock note, pursuant to the security agreement. JNB returned the remaining value of the CD to HAC.

On February 22, 1990, plaintiffs notified JNB that they would not guarantee any further draws on the Jock loan for which their CD was collateral. Although the notice referred to the loan of $100,000, JNB apparently took it as applying to the $150,000 loan which was secured by the Goodhue/Shaw CD. The loan ledger shows no draws after February 22, 1990, and only one payment, on March 12, 1990. The principal balance was then $103,353.48. *See id.* Ex.25, p. 11. On March 29, 1991, JNB took the $100,000.00 Goodhue/Shaw CD to set off the note, leaving an unpaid balance of $7,666.67. *See id.* p. 3, 9, 11. JNB did not notify plaintiffs that the CD was taken to pay the defaulted loan, but plaintiffs did stop receiving interest on the CD after that date.

According to the $400,000.00 note ledger, numerous draws and payments were made on that loan. On April 30, 1990, a payment of $105,780.39 was made. On May 1, 1990, a final payment of $404.31 was made and the demand grid note was marked "PAID."

On or about June 1, 1992, plaintiffs filed suit in federal court against JNB and others seeking recovery of the $100,000.00 CD. On February 26, 1993, the Office of the Comptroller of the Currency determined that JNB was unsafe or unsound, closed the bank, and appointed the FDIC as receiver of JNB. The federal court action was stayed pending plaintiffs' pursuit of administrative claims with FDIC. FDIC disallowed plaintiffs' claims, and plaintiffs filed an amended complaint dated March 21, 1994 in this, their federal suit.

Plaintiffs' causes of action against FDIC are as follows. The first cause of action alleges that JNB negligently or intentionally made misrepresentations as to Jock's financial condition which induced plaintiffs to enter into the guarantee agreement. Alternatively, plaintiffs allege a cause of action against FDIC as insurer of the CD held by a failed bank. The second cause of action alleges third party beneficiary breach of contract in that JNB improperly administered the loan, of which plaintiffs held a significant interest. For their sixth cause of action, plaintiffs allege that JNB violated the New York Deceptive Acts and Practices Law Section 349(a) by misleading them as to the financial soundness of Jock's construction project.

Defendant FDIC bases its motion for summary judgment upon 12 U.S.C. § 1823(e), arguing that all claims against it must fail because § 1823(e) bars use of agreements which do not meet the requirements of § 1823(e). FDIC argues that JNB providing accurate information about the financial condition of the project to plaintiffs was an unwritten condition precedent to plaintiffs' performance of the note guarantee; therefore, its use against FDIC is barred and the plaintiffs' claims must fail. On the alternative claim, FDIC argues that the CD was liquidated prior to the failure of JNB; therefore, the CD was nonexistent and no insurance was available when the bank failed.

Plaintiffs argue in opposition that the CD was not produced by JNB or the FDIC and no proof was offered of actual cancellation. Plaintiffs argue that no evidence by someone with knowledge of the application of the CD to the note was offered, as well as lack of authentication for the ledger records showing payments on various notes. Plaintiffs reiterate the misrepresentations of JNB and improper application of funds to Jock loans, arguing that genuine issues of fact remain.

Finally, plaintiffs state that FDIC is liable for insured deposits by virtue of the 12 U.S.C. § 1821(f) statutory scheme.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. Thus, summary judgment is proper where there is "little or no evidence ... in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### II. 12 U.S.C. § 1823(e)

Section 1823(e) provides that any agreements which would diminish or defeat the FDIC's interest in an asset acquired from an insured institution, and which do not meet its writing, timing, approval, and recording requirements, are invalid as against the FDIC.[3] 12 U.S.C. § 1823(e). The purpose of that section is to protect the FDIC from secret agreements, so that the FDIC may rely on bank records at the time of examination to determine soundness or at the time of acquisition of an institution determined to be unsafe or unsound. *Langley v. FDIC*, 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). Furthermore, the approval, timing, and recording requirements will help ensure prudent consideration prior to making the loan and protect against collusive reconstruction of loan terms by banks and borrowers when bank failure appears imminent. *Id.* at 92, 108 S.Ct. at 401–02.

Preliminarily, a loan guarantee is an asset to which § 1823(e) applies. *FDIC v. Bernstein*, 944 F.2d 101, 108 (2d Cir.1991). The court must follow a two step process to determine if a defense or claim against FDIC fails due to Section 1823(e). *FDIC v. Giammettei*, 34 F.3d 51, 55–58 (2d Cir.1994). First the court must determine whether the

---

3. Section 1823(e) provides, in pertinent part:
   No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
   (A) is in writing,
   (B) was executed by the depository institution and any other person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
   (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
   (D) has been, continuously, from the time of its execution, an official record of the depository institution.
   12 U.S.C. § 1823(e)(1).

defense or claim is based upon an agreement within the meaning of Section 1823(e). *Id.* at 55. If the defense or claim is an "agreement" under 1823(e), then it must be determined whether the agreement meets the requirements of the section. *Id.* If the agreement does not meet the Section 1823(e) requirements, then the defense or claim fails as a matter of law. *See id.* at 58.

### A. Negligent or Intentional Misrepresentation Claim

■ Plaintiffs claim that JNB misrepresented to them, either by false statements or by omission, the financial condition of the Jock construction project, inducing them to guarantee Jock's grid note. In effect, therefore, plaintiffs claim that JNB warranted to them Jock's financial condition. Since Jock's financial condition was not as warranted by JNB, plaintiffs were not required to perform. That is, plaintiffs' guarantee of the note was no longer valid because the warranty was false, and JNB wrongly took the CD to pay the defaulted note. Restated, any warranty as to Jock's financial condition would be a condition precedent to plaintiffs' performance of the guarantee. Thus, this claim is clearly based upon a condition precedent. *See Langley*, 484 U.S. at 90–91, 108 S.Ct. at 400–01 (finding that warranty made by bank which allegedly was condition of performance on a note was a condition precedent).

This is a classic situation in which Section 1823(e) applies to permit FDIC to rely on bank records and to protect against secret agreements. When reviewing a bank's records, FDIC would see a loan guarantee and make judgments as to the assets of the bank based upon the guarantee. If some unwritten agreement affected the guarantee, the financial condition of the bank would be different than it appeared from the records. A condition precedent to plaintiffs' performance of the guarantee, "including the truth of an express warranty, is part of the 'agreement' to which the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) attach." *See Giammettei*, 34 F.3d at 55 (quoting *Langley*, 484 U.S. at 96, 108 S.Ct. at 403). Here, therefore, the plaintiffs' claim of misrepresentation in the inducement is based

upon the truth of an express warranty by JNB, which is an agreement within the meaning of § 1823(e).

There is no question that any condition precedent based upon a warranty by JNB as to the financial condition of the Jock construction project was not in writing. The "agreement" fails to meet the writing requirement of § 1823(e). Therefore, plaintiffs are barred by § 1823(e) from asserting the misrepresentations of JNB against FDIC, and their claim of negligent or intentional misrepresentation must fail as a matter of law. *See Giammettei*, 34 F.3d at 58; *Bernstein*, 944 F.2d at 108; *Simms v. Biondo*, 816 F.Supp. 814, 824 (E.D.N.Y.1993); *Krauss v. FDIC*, 769 F.Supp. 519, 524 (S.D.N.Y.1991); *see also Yankee Bank for Finance & Savings v. Task Assocs.*, No. 88–CV–224, 1989 WL 87430, at *13, 1989 U.S.Dist. LEXIS 9159, at *37 (N.D.N.Y. Aug. 4, 1989) (claim against FDIC based on oral commitment fails).

Plaintiffs argue that many material issues of fact remain which preclude summary judgment. Plaintiffs' argument regarding the issues of fact is summarized as follows:

> The proof in this case is replete with the bad faith and breach of duty to deal in good faith by JNB with plaintiffs. In the face of such proof it is wholly improper for the Court to assume the truthfulness and the accuracy of the contemporaneous JNB records. Moreover, there is no competent proof of a proper set-off and cancellation of the plaintiff's [sic] FDIC's insured CDs. As such, summary judgment should be denied.

(Pls.' Mem. Law at 8.) Even assuming that plaintiffs' allegations of bad faith and breach of duty are true, however, the outcome does not change. As unfair as it may seem, Section 1823(e) is the law and the court must follow the law. Plaintiffs claims are based upon misrepresentations by JNB which constitute agreements. Those agreements, in turn, are invalid against FDIC. Therefore, any facts relating to the misrepresentations, however replete the record may be with them, are irrelevant to the issue before the court. Thus, although those facts may be in dispute they are not considered in deciding the summary judgment motion. *See Liberty*

*Lobby, Inc.,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

#### B. Third Party Beneficiary Breach of Contract Claim

This claim alleges that JNB improperly administered Jock's loans. Although plaintiffs' argument is not totally clear on this claim, the court will perform as full an evaluation of the arguments as is possible. The first issue is the $150,000.00 grid note issued on June 15, 1989. Taking plaintiffs' allegations as true, JNB never notified plaintiffs that the $100,000.00 note was paid by renewal and that their CD was collateral on the $150,000.00 renewal note. As plaintiffs state, "nor did [plaintiffs] consent expressly or by operation of law to a reissue of their original limited guaranty *under the facts and circumstances which prevailed where the JNB had misrepresented the status of Jock's project.*" (Pls.' Mem. Law at 7 (emphasis added).) Thus, this claim is based upon an unwritten condition to the guaranty: that the guaranty could only be reissued if JNB told the truth about Jock's financial condition. Likewise, as discussed above, the invalidity of the hypothecation agreements is based upon fraudulent inducement, which is an agreement subject to § 1823. Because the claim is based upon a condition which falls within the ambit of § 1823(e) but fails to meet the requirements of that section, the claim fails as a matter of law. *See Giammettei,* 34 F.3d at 58–59; *Bernstein,* 944 F.2d at 108; *Simms,* 816 F.Supp. at 824; *Krauss,* 769 F.Supp. at 524; *see also Yankee Bank for Finance & Savings,* No. 88–CV–224, 1989 WL 87430, at *13, 1989 U.S. Dist. LEXIS 9159, at *37 (claim against FDIC based on oral commitment fails).

■ The second issue is the proper application of HUD distributions to the $150,-000.00 grid note. Plaintiffs allege that JNB improperly allocated HUD distributions to the various outstanding grid notes. If the plaintiffs' argument is that the HUD distributions should have been applied to the $150,000.00 grid note prior to application to any of the other notes, then that argument would be based upon some unwritten agreement to do so. Use of such agreement against FDIC would be precluded by

§ 1823(e). *See Mainland Sav. Ass'n v. Riverfront Assocs., Ltd.,* 872 F.2d 955, 956 (10th Cir.) (defense of breach of implied covenant of contractual fair dealing barred by § 1823(e) due to failure to meet that section's writing requirement), *cert. denied,* 493 U.S. 890, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989); *FDIC v. Roldan Fonseca,* 795 F.2d 1102, 1107–1110 (1st Cir.1986) (claim of improper disbursement of loan proceeds barred by § 1823(e) where the proper disbursement agreement was oral); *Yankee Bank for Finance & Savings,* 1989 WL 87430, at *8, 1989 U.S. Dist. LEXIS 9159, at *24. Moreover, such a claim could not be proven without relying on documents outside JNB's records, which is precluded by § 1823(e). *See Clay v. FDIC,* 934 F.2d 69, 73 (5th Cir.1991) (claim barred where unable to prove it on the face of bank's documents).

Finally, plaintiffs question the truthfulness, accuracy, and authenticity of JNB's loan ledgers. Plaintiffs point to defendant Fred Dupee's letter dated August 24, 1990 advising plaintiffs that between $80,000.00 and $112,000.00 remained outstanding, while the loan ledger shows $103,242.38 outstanding on the same date. (*See* Dep. Ex. 16, 25.) Dupee explained in his deposition, however, that he was referring to the amount outstanding on the HUD contract. Without any evidence from plaintiffs except the disparity of numbers, and given that the August 24 letter was, to say the least, unclear, plaintiffs have failed to raise a genuine issue of fact regarding the accuracy of the ledgers.

As to authenticity, Dupee, who at the time was regional vice-president of JNB, testified that these were JNB's loan ledger records of the grid notes at issue here. Furthermore, in keeping with the purpose of § 1823, FDIC is entitled to rely upon the accuracy of JNB's records in their entirety. Side agreements and documents outside the bank's records cannot be used against the FDIC to dispute those records. *See Clay,* 934 F.2d at 73; *Yankee Bank for Finance & Savings,* 1989 WL 87430, at *8, 1989 U.S. Dist. LEXIS 9159, at *24.

#### C. Violation of New York Deceptive Acts and Practices Law Claim

■ Plaintiffs base this claim upon JNB's misleading statements or assurances as to

the financial soundness of Jock's construction project, alleging a violation of New York General Business Law § 349. The New York law forbids "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state...." N.Y.Gen.Bus.Law § 349(a) (McKinney 1988). However, this consumer-protection law is not applicable to commercial loan transactions. *Yankee Bank for Finance & Savings,* 1989 WL 87430, at *14, 1989 U.S. Dist. LEXIS 9159, at *41–42; *Quail Ridge Assocs. v. Chemical Bank,* 162 A.D.2d 917, 920, 558 N.Y.S.2d 655 (3d Dep't), *appeal dismissed without op.,* 76 N.Y.2d 936, 563 N.Y.S.2d 64, 564 N.E.2d 674 (1990).

Here all parties involved, including the plaintiffs, were knowledgeable and experienced. The transactions were commercial loans to finance a construction project, not "ordinary or recurring consumer transaction[s]." *See id.* at *14, 1989 U.S. Dist. LEXIS 9159, at *41. Therefore, FDIC's motion for summary judgment on this claim must be granted. *Id.* at *14, 1989 U.S. Dist. LEXIS 9159, at *42.

### D. Insured Deposit Alternative Claim

Plaintiffs claim that their CD was not liquidated, and if it was liquidated it was improper, and therefore the CD was an insured deposit which should be paid by FDIC. FDIC insures deposits of up to $100,000.000, paying depositors for insured amounts at the time of bank closure. 12 U.S.C. §§ 1817(i), 1821(a), (f). According to the JNB records, upon which FDIC is entitled to rely, *see* § 1823(e), the Goodhue/Shaw CD was liquidated on March 29, 1991, prior to JNB's closure on February 26, 1993. Therefore, there was no deposit at the time of the bank's closure for FDIC to insure. Further, the claim that the CD was improperly liquidated must fail because it is barred by § 1823(e). See discussion and cases cited in Section B, *supra.*

### CONCLUSION

Accordingly, it is hereby ORDERED that

1. Defendant FDIC's motion for summary judgment is GRANTED, and

2. The complaint as against defendant FDIC is DISMISSED.

IT IS SO ORDERED.