16 F.3d 568
 RESOLUTION TRUST CORPORATION, as receiver for Shenandoah
Federal Savings Bank, Plaintiff-Appellant,
v.
Bobby S. ALLEN; James Egglezos; Ronald Foster; James
Nevins; Jerry Warren; Monica Warren, Defendants-Appellees,
and
American Resort Services, Incorporated, a corporation, Defendant.
 No. 93-1718.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1993.
Decided Feb. 1, 1994.
 
 ARGUED: Robert Parker Fletcher, Nixon, Hargrave, Devans & Doyle, Washington, D.C., for Appellant. Stephen Godfrey Jory, Jory & Smith, Elkins, West Virginia, for Appellees. ON BRIEF: Deborah A. Tarasevich, Nixon, Hargrave, Devans & Doyle, Washington, D.C.; Stephen L. Thompson, Cecil, Barth & Thompson, Charleston, West Virginia; James M. Barker, Assistant General Counsel, Michael P. Condon, Senior Counsel, Sheila Kraft Budoff, Resolution Trust Corporation, Washington, D.C., for Appellant.
 Before MURNAGHAN, WILKINSON, and WILLIAMS, Circuit Judges.
 OPINION
 WILLIAMS, Circuit Judge:
 
 
 1
 This appeal comes to us in a peculiar but increasingly familiar procedural posture. Resolution Trust Corporation (RTC) was appointed as receiver for Shenandoah Federal Savings Bank after a state court had entered judgment against Shenandoah but while the case was pending on appeal before the West Virginia Supreme Court of Appeals. RTC removed the action to the United States District Court for the Northern District of West Virginia pursuant to 12 U.S.C.A. Sec. 1441a(l )(3) (West Supp.1993). RTC then filed a motion to alter or amend the state court judgment, arguing that the claim was barred and that even if it was not barred, the judgment should be reversed. The district court adopted the state court judgment as its own for purposes of appeal, but declined to consider the merits of RTC's motion to alter or amend the state court judgment.
 
 
 2
 RTC contends that the district court erred in declining to address RTC's motion on the merits or to take any action on the new federal defenses asserted by RTC. These federal defenses included RTC's claim that the allegations against the bank in the state court proceeding are precluded under the D'Oench Duhme doctrine,[1] as well as 12 U.S.C.A. Secs. 1821(d)(9), 1823(e) (West 1989), because the alleged liability could only arise out of agreements unrecorded in bank records. On the basis of these defenses, RTC contends that we should reverse the judgment against it and award it judgment as a matter of law. Because we agree that these claims are barred, we reverse the judgment adopted by the district court and grant judgment as a matter of law in favor of RTC. Before reaching this issue, however, we will discuss the proper procedure when RTC removes state court judgments to the district court.
 
 I.
 
 3
 In April 1985, Shenandoah Federal Savings Bank filed an action in the Circuit Court of Pocahontas County, West Virginia, seeking declaratory relief and indemnification as well as resolution of claims relating to an account that American Resort Services (ARS) established with Shenandoah. ARS and all its customers whose funds had been placed in the account (the Purchasers) were named as defendants. The funds were earnest money deposits for the purchase of ski resort condominiums to be constructed by ARS. ARS had removed some of the funds from the account and converted them for its own use, and Shenandoah sought to relieve itself of any liability for these actions.
 
 
 4
 The Purchasers filed counterclaims against Shenandoah alleging that it was the trustee for the funds in the account and that it breached its fiduciary duty to safeguard the funds.[2] According to the Purchasers' allegations, Shenandoah had knowledge of the terms of the purchase agreements and of ARS's inability to fulfill those terms. The counterclaims also alleged that Shenandoah had a duty to investigate ARS's assertion that the Purchasers had defaulted, which was the basis of ARS's claim that it was entitled to receive the funds. The Purchasers contended that Shenandoah had wrongfully allowed ARS to declare them in default on the purchase contracts and withdraw the earnest money from the account. Shenandoah responded that it lacked any knowledge of ARS's improper conduct and therefore it could not be liable for any wrongful conduct of ARS. Shenandoah also maintained that it was contractually obligated by the deposit agreement to comply with ARS's request to release the money.
 
 
 5
 Five representative claims proceeded to trial in January 1991. After a two-day trial, the state court directed a verdict in favor of the Purchasers on their counterclaims. Specifically, the state court found that the deposit agreement established an escrow account, that Shenandoah was a fiduciary for the funds placed in the escrow account, and that Shenandoah breached its duty to notify those with an interest in the escrow account prior to releasing the funds. The court also concluded that Shenandoah had actual knowledge of the terms of the purchase agreements and was negligent in acting in derogation of the Purchasers' rights under those agreements. Shenandoah filed a petition for appeal to the West Virginia Supreme Court of Appeals which was granted in March 1992.
 
 
 6
 This appeal was pending in May 1992, when the Office of Thrift Supervision found Shenandoah to be in an unsafe and unsound condition and RTC was appointed Receiver for Shenandoah. RTC removed the case to federal district court and instituted the actions which are the basis of this appeal.[3] We will address first RTC's arguments regarding the appropriate procedure to be employed by the district court when a state court judgment is removed to federal court under 12 U.S.C. Sec. 1441a(l )(3).[4] After this discussion, we will consider RTC's assertion that the Purchasers' claims are barred and that it is entitled to judgment as a matter of law.
 
 II.
 
 7
 After RTC removed the judgment against Shenandoah to federal court, the district court, employing the approach of the Fifth Circuit in In re Meyerland Co., 960 F.2d 512 (5th Cir.1992) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993), adopted the judgment of the state court without considering the merits of RTC's motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). In Meyerland, the Fifth Circuit adopted a procedure which provided "for the district court to take the state judgment as it finds it, prepare the record as required for appeal, and forward the case to a federal appellate court for review." Id. at 520.
 
 
 8
 RTC contends that after removal to federal court, the district court should have addressed the issues presented by the case on their merits before appeal was taken. Although our circuit has not had occasion to address this particular procedural situation, other circuits which recently have considered it have agreed in general with RTC's position. The Eleventh Circuit in Jackson v. American Savings Mortgage Corp., 924 F.2d 195, 198 (11th Cir.1991), emphasized that the role of a federal court of appeals is to review the actions of a federal district court, not a state court. In accord with this role, the Eleventh Circuit required that the party seeking appeal first file a motion in the district court to modify or vacate the order or judgment within ten days from the removal date. Id. at 199 n. 9. After the district judge either denies the motion to vacate or alter the judgment, or enters a new order or judgment, the party may appeal to the federal appellate court. Id. at 199.
 
 
 9
 The Third Circuit in Resolution Trust Corp. v. Nernberg, 3 F.3d 62, 67 (3rd Cir.1993), was also faced with the question of "what the district court must do when it is presented with a judgment that has been taken to the state appellate court." In addressing this question, the Third Circuit agreed that it was inappropriate to "impose an appellate role on the district courts" but recognized the unique situation presented by the ability of RTC to raise new issues on appeal that were not brought before the state court. Id. at 68. See also Ward v. Resolution Trust Corp., 972 F.2d 196, 199 (8th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993); In re 604 Columbus Ave. Realty Trust, 968 F.2d 1332, 1343 (1st Cir.1992); Meyerland, 960 F.2d at 519 (all allowing RTC to assert federal defenses on appeal that were not raised in the earlier proceeding). The Third Circuit recognized that some of these new federal issues might necessitate evidentiary hearings before the district court and "[i]t would be inefficient to hear such cases on appeal if prior consideration by the district court would eliminate the need to remand." Nernberg, 3 F.3d at 68. The Third Circuit directed that parties be allowed to file motions to alter or modify the judgment of the state court (such as Rule 59(e) motions) within thirty days of the date the case is docketed in the district court. Id. If the parties fail to file a motion or the district court denies any motions filed, the district court should enter an order adopting the state court judgment as its own. Id. If a party then desires to appeal, the appropriate federal rules of procedure will be applicable. Id.
 
 
 10
 We favor a hybrid of the Eleventh and Third Circuits' approaches. As presented by RTC in this appeal, under this hybrid procedure, immediately after removal the district court would adopt the state court judgment as its own. After this adoption, the judgment would be treated the same as other judgments entered by the district court and the parties would follow the ordinary rules regarding post-judgment remedies. They may file motions pursuant to the applicable Rules of Civil Procedure,[5] or file a timely notice of appeal to the federal appeals court. This approach permits, but does not require, the parties to file post-judgment motions, and it does not create a special procedural time frame for post-judgment motions in cases removed by RTC. It also allows the district court to consider any new federal questions injected into the case by the addition of RTC, and require whatever briefing, argument or hearings it deems necessary to resolve these questions and prepare an adequate record for review on appeal. This hybrid procedure also assures that the appeal is based on a judgment actually entered by the district court, and thereby precludes this court from assuming the role of a state appellate court.
 
 
 11
 In this case, after removal pursuant to Sec. 1441a(l )(3) RTC filed a Rule 59(e) motion to alter or amend the judgment based on the federal defenses of D'Oench Duhme and Sec. 1823(e). The district court adopted the state court judgment as its own, satisfying the first step of the procedure we have outlined, but did not consider the merits of RTC's motion to alter and amend the state court judgment. Although remand for the district court to address these arguments would be the normal course, we believe it would be a fruitless exercise here. The parties have thoroughly briefed the D'Oench Duhme issue before us, and as the subsequent section will indicate, it is clear that the Purchasers' claims do not survive these defenses. Therefore, in the interest of judicial economy, and in light of the already peculiar procedural posture of this case, we will proceed to address the merits of the federal defenses raised by RTC.
 
 III.
 
 12
 The D'Oench Duhme doctrine, as delineated by the Supreme Court in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny, prohibits claims based upon agreements which are not properly reflected in the official books or records of a failed bank or thrift. The purpose of the doctrine is to enable the FDIC or RTC to rely on official bank records to set forth the rights and obligations of the financial institution to the exclusion of extraneous matters. FDIC v. Hadid, 947 F.2d 1153, 1157 (4th Cir.1991). Some of the other purposes underlying the D'Oench Duhme doctrine are to assure proper recording of banking acts and to satisfy the need of banking regulators to determine the face value of the assets of a failed institution. Langley v. FDIC, 484 U.S. 86, 91-93, 108 S.Ct. 396, 401-402, 98 L.Ed.2d 340 (1987).
 
 
 13
 Congress later codified elements of the common law D'Oench Duhme doctrine in 12 U.S.C.A. Secs. 1823(e) and 1821(d)(9) in order to protect taxpayers, depositors, and creditors of failed financial institutions and federal deposit insurance funds. Section 1823(e) precludes any claims that are based on agreements which tend to diminish or defeat the interest of RTC in an asset it has acquired unless the agreement:
 
 
 14
 (1) is in writing,
 
 
 15
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 
 
 16
 (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 
 
 17
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
 
 
 18
 12 U.S.C.A. Sec. 1823(e). All four of these requirements must be satisfied for an agreement to be enforceable against RTC. Resolution Trust Corp. v. McCrory, 951 F.2d 68, 71 (5th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 459, 121 L.Ed.2d 368 (1992); FDIC v. Wright, 942 F.2d 1089, 1101 (7th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992). Moreover, Sec. 1821(d)(9) provides that any agreement that does not satisfy Sec. 1823(e) cannot be the basis of a claim against a receiver of a failed financial institution.
 
 
 19
 RTC contends that the Purchasers' counterclaims, including allegations of negligence and breach of fiduciary duty regarding an escrow account, are precluded under the D'Oench Duhme doctrine and Sec. 1823(e), because if such claims exist they arise out of unrecorded agreements. We agree. Both D'Oench Duhme and Sec. 1823(e) require that claims against RTC must be based on written agreements between the claimants and the financial institution. There are no written agreements or other documents between Shenandoah and the Purchasers. The only written agreement on which the Purchasers can rely is the deposit agreement between ARS and Shenandoah. Yet the deposit agreement only has the signatures of three officers of ARS; none of the Purchasers' signatures is on the deposit agreement. Moreover, there is nothing in the text of the agreement which establishes a trust or escrow account,[6] and even if there were, as indicated above, the Purchasers are not signatories to the agreement.
 
 
 20
 The Purchasers also assert liability of RTC based on Shenandoah's knowledge of the terms of the purchase agreements between ARS and the purchasers, specifically that the agreements required the establishment of escrow accounts. Shenandoah was not a party to the purchase agreements, however, and even if it had knowledge of the contents of the agreements, as the state court found, the purchase agreement documents were neither executed by Shenandoah, approved by its Board of Directors, nor kept as an official record of the depository institution as required by Sec. 1823(e) to impose liability on RTC.
 
 
 21
 Despite the fact that the Purchasers are not parties to the deposit agreement and the lack of textual support in the deposit agreement for the existence of an escrow account, the Purchasers maintain that the state court's conclusion that the deposit agreement constitutes a valid escrow and creates a trust account controls, and therefore their claims are not barred by D'Oench Duhme and Sec. 1823(e). As a federal court we are bound by the federal law made applicable because of RTC's participation in this case, regardless of the merit or lack thereof of the state court's conclusion. See 12 U.S.C.A. Sec. 1441a(l )(1) (any civil action to which RTC is a party shall be deemed to arise under federal law); Adams v. Madison Realty & Dev., Inc., 937 F.2d 845, 855 (3rd Cir.1991) (civil actions involving RTC are governed by federal law). Enforcement of agreements which must be inferred from written recorded agreements is forbidden under D'Oench Duhme; explicit written documentation is required, and there is none that supports the establishment of a trust or escrow account. See Savers Fed. Sav. & Loan Ass'n v. Amberley Huntsville, Ltd., 934 F.2d 1201, 1207 (11th Cir.1991) ("[A]ny arguments relating to the duties owed by the parties ... must be based on the terms appearing on the face of the ... documents."); Carteret Sav. Bank v. Compton, Luther & Sons, 899 F.2d 340, 344 (4th Cir.1990) (holding that it is not a defense to an action that the FDIC knew of a non-contemporaneous collateral agreement); Chatham Ventures, Inc. v. FDIC, 651 F.2d 355, 362 (5th Cir.1981), cert. denied, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982) (oral joint venture agreement did not satisfy that valid agreement must be in writing). Because there is no written agreement which supports the Purchasers' claims, they are barred from enforcement against RTC by D'Oench Duhme and Sec. 1823(e).
 
 IV.
 
 22
 In conclusion, when RTC removes a case after a state court judgment has been entered, the district court should immediately adopt the judgment as its own. Thereafter, the parties should follow the applicable rules regarding post-judgment motions and notices of appeal. Because we hold that the Purchasers' claims are barred, we reverse the judgment in their favor and enter judgment in favor of RTC as a matter of law.
 
 
 23
 REVERSED.
 
 
 
 [1]
 D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)
 
 
 [2]
 ARS filed a petition for relief in bankruptcy after Shenandoah filed its declaratory judgment action, and the claim against ARS was resolved by the bankruptcy court
 
 
 [3]
 Prior to removal, RTC filed a motion to dismiss these claims pursuant to 12 U.S.C.A. Sec. 1821(d)(13)(D) (1989), for lack of subject matter jurisdiction before the West Virginia Court of Appeals. That motion was denied and RTC has not further contested the lack of subject matter jurisdiction
 
 
 [4]
 The Purchasers contend that the district court and our court lack jurisdiction over this matter. They argue that RTC's removal violates 12 U.S.C.A. Sec. 1821(d)(5)(F)(ii) (West 1989), which provides that nothing in FIRREA (Financial Institutions Reform, Recovery, and Enforcement Act) shall prejudice any right of a claimant to continue an action filed before the appointment of the receiver. We find this argument to be without merit. 12 U.S.C. Sec. 1441a(l )(1) (West Supp.1993) of FIRREA explicitly grants federal courts jurisdiction over any case to which RTC is a party and Sec. 1441a(l )(3) allows the removal of any action to which RTC is a party, including those pending appeal. See In re Meyerland Co., 960 F.2d 512, 519 (5th Cir.1992) (en banc) (authorizing the FDIC's removal of an action pending appeal in state court), cert. denied, --- U.S. ----, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993). The Purchasers' right to continue their actions against RTC as receiver for Shenandoah is not defeated by the removal, they simply must continue them in federal rather than state court
 
 
 [5]
 For instance, they may file a motion to alter or amend the judgment under Rule 59(e) which must be served no later than ten days after the district court's entry of the state court judgment as its own
 
 
 [6]
 The complete text of the agreement is as follows:
 We hereby apply for a savings account in Shenandoah Federal Savings and Loan Association and for issuance of evidence thereof in their joint names as joint tenants with the right of survivorship and not as tenants in common. You are directed to act pursuant to any one or more of the joint tenants' signatures, shown on reverse side in any manner in connection with this account and, without limiting the generality of the foregoing, to pay, without any liability for such payment, to any one of the survivor or survivors at any time. It is agreed by the signatory parties with each other and by the parties with you that any funds placed or added to the account by any one of the parties is and shall be conclusively intended to be a gift, and delivery at that time of such funds to the other signatory party or parties, to the extent of his, her or their prorata interest in the account. You are authorized to accept checks and other instruments for credit to this account, whether payable to one or more of the parties, and to supply any needed endorsement. You are relieved of any liability in connection with collection of all items handled by you without negligence, and shall not be liable for acts of your agents, subagents or others, or for any casualty. Withdrawals may not be made on account of such items until collected and any amount not collected may be charged back to this account, including expenses incurred, and any other outside expense incurred relative to this account may be charged to it. We further agree that the savings account established hereby is subject to and is to be administered in accordance with the rules established by the board of directors for the account classification known as NOW ACCOUNTS, and acknowledge receipt of a copy of said rules.
 (J.A. at 499.)