George JOHN and Sandra John,
Plaintiffs–Appellants,

v.

RESOLUTION TRUST CORPORATION,
Receiver of Germania Bank, a Federal
Savings Bank, Defendant–Appellee.

No. 94–1043.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1994.

Decided Nov. 8, 1994.

---

William L. Berry (argued), Dunham, Boman & Leskera, Belleville, IL, for plaintiffs-appellants.

Donald L. Smith (argued), Hoagland, Fitzgerald, Smith & Pranaitis, Alton, IL, for defendant-appellee.

Before CUMMINGS, CUDAHY and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

The walls of the residence at 408 Bauer Lane, Collinsville, Illinois were cracking as the house was sinking into the ground. Germania Savings and Loan Association ("Germania") plastered over cracks in the exterior walls to conceal the subsidence before selling the house. The issue presented in this case is whether the doctrine of *D'Oench* estoppel [1] bars the buyers, George and Sandra John, from recovering for fraud against Germania's successor, the Resolution Trust Corporation ("RTC").

## BACKGROUND

On January 10, 1985, George P. John and Sandra J. John purchased this residential real estate parcel from Germania. The Johns made the purchase pursuant to a one-page printed form real estate sales contract with a one-page amendment. The amendment stated that the buyer was to pay a down payment of $17,920 at closing and obtain a V.A. loan in the amount of $44,000 for a total purchase price of $61,920. Germania thus was merely the seller, and did not provide any of the financing for the purchase.

After moving onto the property, the Johns discovered damage to the walls and foundations which they determined to be evidence of mine subsidence. The Johns concluded that the damage existed prior to their purchase of the house and that Germania had concealed the problem.

On September 27, 1989, the Johns filed an action against Germania in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois. While discovery was proceeding in that action, Germania was declared insolvent and the RTC was appointed as receiver on July 26, 1991. After the Third Judicial Circuit substituted the RTC as a party in interest, the Johns filed a claim with the RTC for property damage and loss of value of property resulting from the intentional fraud by Germania's employees. The RTC denied the Johns' claim on February 22, 1993.

On March 12, 1993, the Johns filed their complaint in the present action in the United States District Court for the Southern District of Illinois pursuant to 12 U.S.C. § 1821. The complaint alleged that Germania failed

---

1. See *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956.

to disclose and concealed from the Johns material facts concerning prior subsidence and subsidence damage and "falsely represented to the Plaintiffs that the property was in good condition." The Johns sought relief for fraud and under the Illinois Consumer Fraud and Deceptive Business Practices Act, Chap. 121½, Sec. 262, *et seq.*, Ill.Rev.Stat.

The RTC moved for summary judgment, asserting that the Johns were estopped by the *D'Oench* doctrine and 12 U.S.C. § 1823(e) from pursuing their claims. The district court granted summary judgment in favor of the RTC on December 3, 1993, holding that Germania's false representations and concealment were "side agreements ... barred by the *D'Oench, Duhme* doctrine, and its partial codification, 12 U.S.C. § 1823(e)." We disagree and reverse.

## DISCUSSION

The *D'Oench* doctrine began as a variety of federal common law equitable estoppel intended to protect the FDIC by making "secret side agreements" between bank employees and borrowers unenforceable against the FDIC once it had stepped into the failed bank's shoes. In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, the defendant, a securities dealer, sold bonds to the Belleville, Illinois Bank and Trust. When the bond issuer later defaulted, the securities dealer issued notes to the bank for the face value of the bonds so that the bank would not have to show the past due bonds in its records. The Bank agreed never to call the notes and to refund interest payments which the defendant periodically made to perpetuate the fiction that the notes were viable bank assets.

The Belleville bank eventually became insolvent and the FDIC attempted to collect on the notes. The Supreme Court held that because of his participation in the deceptive scheme, the defendant was estopped from asserting against the FDIC defenses of lack of consideration and the agreement with the bank. The Court noted a "federal policy to protect respondent [FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which respon-

dent insures or to which it makes loans." *Id.* at 457, 62 S.Ct. at 679. The specific intent to defraud the FDIC was not required for the estoppel to apply:

The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled. *Id.* at 460, 62 S.Ct. at 680.

In 1950, Congress partially codified a version of the common law *D'Oench* doctrine. 12 U.S.C. § 1823(e) currently reads:

No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1821(d)(9)(A), which became effective in September 1989, extends § 1823(e) to bar certain affirmative claims against the FDIC or the RTC as receiver:

... any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially compromise, a claim against the receiver or the corporation.

## I.  § 1823(e)

■ By its language § 1823(e) applies only to conventional loan activities.  See *Du Pont v. FDIC*, 32 F.3d 592 (D.C.Cir.1994) (§ 1823(e) does not apply to claim arising out of the bank's administration of an escrow agreement); *Thigpen v. Sparks*, 983 F.2d 644 (5th Cir.1993) (§ 1823(e) does not apply to a claim arising from a bank's sale of an asset in a non-banking transaction).

■ The difficulty in applying § 1823(e) beyond the confines of conventional loan transactions is illustrated by the present case involving a home sale.  Section 1823(e) requires an identifiable "asset" which is acquired by the bank and then transferred to the regulatory agency, and to which the unenforceable agreements must relate.  In this case, only if the money received by Germania from the Johns were treated as the asset would the transaction fit into the framework of § 1823(e).  But § 1823(e) further requires that the RTC have "acquired" this same asset after being appointed as receiver for Germania.  In the present case this occurred six years after the sale was completed.  As the Fifth Circuit demonstrated more fully in *Thigpen,* § 1823(e) cannot sensibly be read to cover agreements relating to the sale of assets in a non-loan transaction.  *Id.* at 647.

Similarly, the only sensible reading of § 1821(d)(9)(A) must limit its scope to the loan-related transactions covered by § 1823(e).  If "agreements" in § 1821(d)(9)(A) reached beyond the limitations of § 1823(e), the section would mean that, for example, trade creditors could only enforce agreements with the bank against the RTC if the bank's board of directors had approved and recorded the deals.  *Id.* at 649.  Such a reading would turn § 1821(d)(9)(A) into "a meat-axe for avoiding debts incurred in the ordinary course of business." *Id.* Such was surely not the intent of Congress.  The RTC's reliance on § 1823(e) as a rationale for summary judgment is thus misplaced.

## II.  The common law *D'Oench* doctrine

Having found that its statutory incarnations do not cover this non-loan transaction, we must determine whether the common law *D'Oench* doctrine operates to bar the Johns' claim.  The common law *D'Oench* doctrine and its statutory counterparts are frequently analyzed together and likely serve identical aims (Justice Scalia relied on *D'Oench* in his analysis of the scope of § 1823(e) in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340).  The two, however, may not be co-extensive.  The common law doctrine, because it is "based on the concept of equitable estoppel," is narrower than § 1823(e) which "makes the fault of the party asserting the unwritten agreement irrelevant."  *Du Pont v. FDIC*, 32 F.3d 592, 597 (D.C.Cir.1994).

Courts have split over whether the common law *D'Oench* doctrine is also broader than § 1823(e) and extends to non-loan transactions.  See *Du Pont*, 32 F.3d 592 (common law *D'Oench* doctrine and statutes are not co-extensive but neither bars suit based on bank's administration of non-written escrow agreement); *Alexandria Associates, Ltd. v. Mitchell Co.*, 2 F.3d 598, 599 (5th Cir.1993) ("*D'Oench* does not apply to the instant non-banking transactions, which were sales of partnership interests in real estate development partnerships"); *Vernon v. RTC*, 907 F.2d 1101, 1107 (11th Cir.1990) (*D'Oench* does not apply where "appellants are not obligees trying to avoid their commitment on an asset.").  But see *Bowen v. FDIC*, 915 F.2d 1013 (5th Cir.1990).

We need not decide today whether the common law *D'Oench* doctrine reaches non-loan transactions, because as a matter of both policy and common sense it does not apply to the present case.  Although the RTC argues that the Supreme Court's most recent clarification of *D'Oench, Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340, dictates the outcome here, in reality *Langley* and its progeny are easily distinguishable.

The defendant in *Langley* borrowed $450,-000 from Planters Trust and Savings Bank to purchase land, executing a note, a collateral mortgage, and personal guarantees as consideration.  When he failed to pay on the note Planters sued.  The defendant raised the affirmative defense that Planters had fraudulently misrepresented the size of the

parcel purchased and the nature of the mineral rights included. Planters became insolvent during the litigation, and the FDIC was substituted as party plaintiff.

The Supreme Court held that a fraudulent misrepresentation of existing facts when relied upon as a precondition for performance constituted an "agreement" under § 1823(e) and thus could not serve as a defense against the FDIC. In discussing the "predominant" equities under the statute, the Court noted that:

> While the borrower who has relied upon an erroneous or even fraudulent unrecorded representation has some claim to consideration, so do those who are harmed by his failure to protect himself by assuring that his agreement is approved and recorded in accordance with the statute. *Id.* at 94 [108 S.Ct. at 402–03.]

Thus *Langley* stands for the proposition that in certain circumstances reliance on a fraudulent misrepresentation can constitute the type of oral agreement barred by *D'Oench.* Other courts, most notably the Tenth Circuit in *FDIC v. Bell,* 892 F.2d 64 (10th Cir.1989), certiorari denied, 496 U.S. 913, 110 S.Ct. 2607, 110 L.Ed.2d 286 (1990), and this Court in *RTC v. Ehrenhaus,* 34 F.3d 441 (7th Cir.1994), and *FDIC v. State Bank of Virden,* 893 F.2d 139 (7th Cir.1990), have extended this holding to include reliance on fraudulent omissions. Yet the RTC goes too far when it contends that these cases are controlling. What *Langley* and its progeny stand for is that if reliance on a fraudulent omission contradicts or is otherwise inconsistent with a written agreement on which the RTC can rely in determining its rights and liabilities, *D'Oench* prevents its use as a defense or the basis of a claim against the RTC. *Langley* has nothing to say about the present case, where the Johns' reliance on Germania's fraudulent omission and concealment was completely consistent with the terms of a form sales contract silent on the issue of latent defects.[2]

The Seventh Circuit opinion in *Virden* is illustrative. State Bank of Virden bought a $120,000 participation in a loan made by the State Bank of Farmersville. The loan participation agreement stated in relevant part:

> Participating Bank [Virden] has made an independent investigation of Borrower, on which Participating Bank solely relied in extending credit by virtue of its participation in said loan, or has waived such investigation; [and] the undersigned [Farmersville] makes no representation or warranty, and assumes no responsibility, of any kind or character to Participating Bank with respect to the validity, regularity, collectibility or enforceability of the loan or any security therefor. *Virden,* 893 F.2d at 144.

When the borrower defaulted, Virden attempted to unilaterally cancel its participation, alleging that Farmersville had lied about and omitted relevant facts concerning the financial health of the borrower. Farmersville later failed, and Virden attempted to set off its claim against Farmersville against another claim by the FDIC against Virden. This Court held that § 1823(e) and the *D'Oench* doctrine barred Virden's set-off claim against the FDIC, because any reliance by Virden on false claims or omissions by Farmersville contradicted the written agreement in which Virden stated that it relied solely on its own investigation in entering the loan participation agreement.

In the present case, the Johns relied on Germania's concealment of, and failure to disclose, prior subsidence in determining that such subsidence had not occurred, as a precondition for their entering into the purchase agreement. Such reliance would be a "secret agreement" in the *D'Oench* sense only if it was inconsistent with their written agreement. Thus, if the written sales contract said *caveat emptor* or the like, the situation would be analogous to *Virden.*[3] Unfortunately for the RTC, the one-page printed form contract said no such thing. Moreover, *caveat emptor* is not the law of Illinois with

---

2. These cases involved loan transactions and were governed by § 1823 and are thus doubly distinguishable.

3. As discussed above, the situation would not be completely analogous because the transaction in *Virden* involved a loan agreement and was therefore covered by the language of § 1823(e).

respect to the sales of used homes. A used home seller has a duty to disclose material defects of which he was aware at the time of the sale. *Posner v. Davis,* 76 Ill.App.3d 638, 32 Ill.Dec. 186, 395 N.E.2d 133 (1979). In light of the parties' duties under the Illinois law of home sales, the Johns' reliance on Germania's silence and concealment was completely consistent with the terms of a sales contract which omitted any mention of latent defects.

In *Texas Refrigeration Supply v. FDIC,* 953 F.2d 975 (5th Cir.1992), the Fifth Circuit similarly held that a suit based on an underlying state law obligation was not barred by the *D'Oench* doctrine where the obligation was not explicitly recited in a written agreement. *Texas Refrigeration* involved a suit by borrowers and guarantors for breach of contract, negligence, and wrongful acceleration following the bank's foreclosure and disposal of the borrower's collateral. The bank was taken over and its successor became insolvent. The FDIC came in as receiver and moved for summary judgment on all claims under *D'Oench.* The Fifth Circuit held that *D'Oench* did not bar claims for wrongful acceleration and improper disposal of collateral. Relying on the good faith requirement for acceleration of a debt under the Texas Uniform Commercial Code, the court held that:

> Obligations about timely acceleration and the disposal of collateral are implicit in every promissory note. These covenants are inferred in every such loan agreement. And because they are an integral element of the relationship between every borrower and lender, they cannot be said to be secret or unwritten in the *D'Oench, Duhme* sense. *Id.* at 981.

The RTC might still argue that even though the duty to disclose was implicit in the written sales contract, *D'Oench* requires that the actual statement "the house is not subsiding" or "the house has no latent material defects" appear in the written agreement. The law of this Circuit and common sense foreclose this argument. In *Howell v. Continental Credit Corp.,* 655 F.2d 743, 746 (7th Cir.1981), this Court held that claims or defenses based on a document which "facially manifests *bilateral* obligations" are not barred by *D'Oench* even where the validity and details of the claim or defense depend on extrinsic oral agreements.

Therefore, even if one were to consider the failure to include an explicit statement as to the non-existence of subsidence an "oral side agreement," the Johns' claim would not be barred because under Illinois law the written sales agreement contains the obligation to disclose material defects upon which the Johns' claim is based.

Common sense leads to the same conclusion. "The key question is whether the oral representations ... were matters that would generally be reflected in the records of ordinary banking transactions. This reflects the central purpose of D'Oench." *Du Pont v. FDIC,* 32 F.3d 592, 600 (D.C.Cir.1994). This Court is not persuaded that a one-page real estate sales contract would ordinarily contain the statement "this house is not subsiding."

More fundamentally, requiring the inclusion of this statement would further none of the purposes underlying *D'Oench.* In *Langley* the Supreme Court articulated three purposes underlying § 1823(e) and the common law *D'Oench* doctrine: (1) "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets," (2) to "ensure mature consideration of unusual loan transactions by senior bank officials," and (3) to "prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Langley,* 484 U.S. at 91–92, 108 S.Ct. at 401.

Clearly, the inclusion of the statement "this house is not subsiding" in the Johns' written sales contract would not have changed the transaction or the records available to bank examiners in the slightest. The Johns were not involved in an unusual loan transaction. They purchased a house and provided their own financing. They neither participated in a scheme to defraud bank authorities nor failed in any meaningful sense to protect themselves in their written agreement. Moreover, the Johns, as mere purchasers in a single transaction with Germania, were in no better position to perceive, and now bear, the risk of the bank's failure,

than the bank's creditors, depositors, or tax-payers.

## CONCLUSION

"[D'Oench] is not a limitless, per se guarantee of victory by federal banking agencies and their successors in interest." *Alexandria Associates, Ltd. v. Mitchell Co.*, 2 F.3d 598, 602 (5th Cir.1993). To require that the Johns bear the risk of fraud and bank failure because they failed to insist that their one-page printed real estate sales contract contain explicit statements guaranteeing the non-existence of unknown and concealed latent defects which the seller had a duty to disclose, stretches the *D'Oench* doctrine of equitable estoppel beyond the breaking point. We therefore reverse the district court's grant of summary judgment for the RTC.