**E.I. DU PONT DE NEMOURS AND COMPANY, Appellant,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver for United National Bank of Washington, Appellee.**

No. 92–5384.

United States Court of Appeals,
District of Columbia Circuit.

Decided Jan. 27, 1995.

Raymond Michael Ripple, Washington, DC, argued the cause for appellant. With him on the briefs was David W. O'Brien, Washington, DC. Dale A. Cooter and Cyrus J. Gardner, Washington, DC, entered an appearance.

J. Scott Watson, Sr. Atty., F.D.I.C., Washington, DC, argued the cause for appellee. With him on the brief were Ann S. DuRoss, Asst. Gen. Counsel, and Richard J. Osterman, Jr., Sr. Counsel, F.D.I.C., Dennis S. Klein and Steven T. Corliss, Washington, DC.

Before EDWARDS, Chief Judge, BUCKLEY, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

Dissenting statement filed by Chief Judge HARRY T. EDWARDS.

GINSBURG, Circuit Judge:

The FDIC seeks rehearing of this case, in which we reversed the judgment of the district court and remanded the matter for further proceedings. *See* 32 F.3d 592 (D.C.Cir. 1994). The agency makes three arguments against our decision.

First, the FDIC claims that by emphasizing its actions as a liquidator of United National Bank of Washington, we ignored the FDIC's role as an insurer and examiner of banks, and therefore failed to appreciate the significance of the unrecorded extension of the escrow agreement prior to UNB's failure. Specifically, the agency contends

that "the [*D'Oench*] doctrine is violated the moment that an unrecorded condition is not reflected in the books and records for the examiners' consideration in making safety and soundness determinations." This contention is not applicable to the facts of this case. The doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942), is directed at transactions that are "designed to deceive the creditors or the public authority or would tend to have that effect." That a "scheme or arrangement" is not evident on the face of a bank's records is generally a good indication that the bank examiner would be deceived about the bank's condition. *See, e.g., Langley v. FDIC*, 484 U.S. 86, 93, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987) ("[O]ne who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities"); 12 U.S.C. § 1823(e). We are aware of no court, however, having held that a failure to record prohibits recovery under *D'Oench* where the court has also concluded that a regulator was not, or was not likely to be, misled by the arrangement. We have neither a warrant nor the inclination to expand the federal common law *D'Oench* doctrine to a case where no insurer, examiner, or liquidator would have deemed an institution any less secure had the escrow agreement in question been extended in writing rather than by practice.

Second, the FDIC argues that the escrow agreement was an "asset and obligation" of UNB; therefore, the failure to record its extension would necessarily impair the bank examiner's assessment of the bank's condition. The FDIC notes, and no one would disagree, that an escrow agreement can be "a thing of value to a bank"; a bank would not maintain an escrow account if it did not expect to profit from doing so. By the same token, as alleged here, a mismanaged escrow account may be a source of liability to a bank. None of this, however, renders the parties' extension of the escrow agreement an "agreement [that] tends to diminish or defeat the interest of the [FDIC] in any asset" under § 1823(e), or a "scheme or arrangement" likely to mislead the FDIC.

In apparent recognition of that fact, the FDIC rather heroically asserts: "It is not necessary that the records reveal to the examiners the potential breach." But if recording the arrangement would not disclose the bank's potential liability, it is not at all clear why the parties' failure to record should immunize the FDIC as receiver from liability for the bank's mismanagement.

■ Du Pont is simply attempting to enforce an obligation stemming from the bank's alleged failure properly to manage du Pont's funds. The FDIC cannot sensibly be allowed to avoid liability for an irregularity that would not have been disclosed by the documentation the FDIC insists should have been found in the records of the bank. This is the same reason that *D'Oench* does not bar a free-standing tort claim. *Vernon v. FDIC*, 981 F.2d 1230, 1234 (11th Cir.1993). While this exception has been said not to apply to "regular banking transactions," *OPS Shopping Center, Inc. v. FDIC*, 992 F.2d 306, 310–11 (11th Cir.1993), whether a regular banking transaction is involved is only "one obvious indici[um]" of whether the disclosure could have made a difference to the regulators—which is the underlying concern. *In re Geri Zahn, Inc.*, 25 F.3d 1539, 1543–44 (11th Cir. 1994). If, and only if, disclosure could have made a difference does *D'Oench* logically bar recovery for failure to disclose. With regard to ordinary banking transactions, we agree that non-disclosure is ordinarily consequential. On the peculiar facts of this case, however, even the FDIC is unable to say that disclosure would have mattered.

Finally, the FDIC argues that our rationale is inconsistent with that of two other recent circuit court decisions. In *RTC v. Allen*, 16 F.3d 568, 574 (4th Cir.1994), the Fourth Circuit held that *D'Oench* barred the claims of certain condominium purchasers for the bank's alleged "negligence and breach of fiduciary duty regarding an escrow account" established by the condominium developer "because if such claims exist they arise out of unrecorded agreements." The developer in *Allen* had placed the purchasers' earnest money in a regular deposit account with the bank, and then withdrawn the funds, falsely

telling the bank, the purchasers alleged, that they were in default on their contracts to purchase. *Id.* at 571–72. The purchasers claimed the bank had knowledge of their agreement with the developer and pursuant to that agreement should not have allowed the developer to withdraw the earnest money without notifying them. *Id.* The court held, under 12 U.S.C. § 1823(e), that since the agreement, as alleged by the purchasers, was not reflected in the records of the bank, the RTC could not be held liable for its violation. *Id.* at 574–75. Indeed, the only "agreement" involving the bank was one establishing a deposit account in the developer's name. *See id.* at n. 6.

The Second Circuit considered a similar situation in *FDIC v. Giammettei*, 34 F.3d 51 (1994). Several investors had executed notes in favor of two promoters, who in turn assigned the notes to a bank as collateral for a loan. When the FDIC sought to enforce the obligations, the investors claimed the bank had taken possession of the notes in violation of an escrow agreement. *Id.* at 55. As in *Allen*, however, what the investors claimed was an agreement establishing an escrow account for their benefit was in fact a very different type of agreement between the bank and the promoters. *Id.* at 56. Once again, the bank had no way of knowing that its right to enforce the notes might be limited by any understanding between the promoters and the investors; therefore the court held that § 1823(e) rendered the investors' defenses to the bank's suit on the notes ineffective as against the FDIC. *Id.*

According to the FDIC, *Allen* and *Giammettei* hold or at least imply that *D'Oench* bars a suit based upon an undisclosed arrangement creating rights in an escrow account. That reads too much into those decisions, however. In fact, the cases are not inconsistent with our understanding of the law, and seem to us to have been rightly decided.

In the paradigmatic *D'Oench* case, as in *Allen* and *Giammettei*, a party is estopped from asserting against the receiver of a financial institution any arrangement that contradicts the obligations reflected on the face of the records of that institution. In *Allen* the RTC could not be faulted for paying the developer from the funds on deposit, just as the thrift would have been allowed to do under its written agreement with the depositor; and in *Giammettei* the FDIC could not be prevented from calling in the notes when the investors defaulted, also just as the bank could not have been. In both cases *D'Oench*, or at least its statutory cousin, barred a third party from making a claim under an alleged agreement that, if only recorded, would have caused the institution or the receiver to act differently.

No court has held that one should be similarly estopped from asserting a liability that allegedly arose independently of any obligation that could possibly appear on the face of the bank's records. Indeed, two other circuits have (even more recently than *Allen* and *Giammettei* ) just reaffirmed that point. In *Murphy v. FDIC*, 38 F.3d 1490 (9th Cir. 1994) (en banc), the holder of an unrecorded letter of credit was able to enforce it against the FDIC because the FDIC would not have valued the bank's assets any differently if the written letter had been among the bank's records. The court held: "Where a person does not lend himself to a scheme which might cause bank examiners to overvalue a bank, by giving the bank a writing which meant less than what is said or otherwise, then [*D'Oench* ] has no application." *Id.* at 1499.

In *John v. RTC*, 39 F.3d 773, 778 (7th Cir.1994), the plaintiffs sued the RTC as receiver of the thrift from which they had purchased a house, claiming that the thrift had concealed certain defects. They were allowed to proceed with their suit against the RTC despite the absence of any written warranty from the thrift; for even an explicit acknowledgment of the warranty "would not have changed the transaction or the records available to bank examiners in the slightest." The court reasoned that "[The *D'Oench* doctrine] has nothing to say about the present case, where the [plaintiff's] reliance on [the thrift's] fraudulent omission and concealment was completely consistent with the terms of a form sales contract silent on the [disputed] issue." *Id.* at 777.

Likewise in the instant case, knowledge that the parties had extended their escrow agreement would not have changed the FDIC's valuation of UNB. Therefore the failure to record the alleged extension is no bar to du Pont's claim, which presents an issue—whether UNB mismanaged the funds—that could not have been anticipated by the FDIC regardless whether the records of the bank included an extension of its escrow agreement with du Pont. Accordingly, the FDIC's petition for rehearing is

*Denied.*

HARRY T. EDWARDS, Chief Judge, dissenting:

I would rehear this case, essentially for the reasons stated in my dissenting opinion to the original majority opinion. *See E.I. du Pont de Nemours & Co. v. FDIC,* 32 F.3d 592, 600–02 (D.C.Cir.1994).