Alan **FORTUNOFF** and Helene **Fortunoff,** Plaintiffs,

v.

**TRIAD LAND ASSOCIATES, individually and as general partner of Triad IV Associates, a limited partnership, First New York Bank for Business, and National Westminster Bank USA, Defendants.**

No. 93–CV–0368 (JS).

United States District Court, E.D. New York.

Oct. 30, 1995.

Charles A. Singer, Torino & Singer, P.C., Mineola, NY, for Plaintiffs.

Kevin P. Simmons, Berkman Henoch Peterson & Peddy, Garden City, NY, for Defendant FDIC.

John M. Burns, III, Law Office of John Burns, New York City and Stephen Schlakman, Lake Success, NY, for Defendant Triad Land Associates.

*MEMORANDUM AND ORDER*

SEYBERT, District Judge:

On September 24, 1992, plaintiffs, Alan and Helene Fortunoff, commenced this action seeking a judgment (1) enjoining and restraining defendant First New York Bank for Business ("FNYB"), and/or defendant Triad Land Associates ("TLA") from collecting on investor notes, dated September 30, 1991, or drawing down upon the Letters of Credit issued by then defendant National Westminster Bank (since released from this action), and (2) declaring the investor notes "null and void." Pending before the Court is a motion for summary judgment by defendant Federal Deposit Insurance Corporation ("FDIC"), as Receiver for FNYB.[1] Defendant FDIC asserts that plaintiffs' claims are barred under the doctrines of waiver, estoppel and law of the case, by the FDIC's "superpower" defenses pursuant to federal common law and the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), and because the FDIC is a holder in due course. Plaintiffs argue that defendant FDIC's defenses are baseless and do not insulate defendant FDIC from liability. Plaintiffs also claim that there are genuine issues of material fact that preclude a motion for summary judgment.

For the reasons set forth below, the defendant's motion for summary judgment is granted.

*FACTUAL BACKGROUND*

As required on a motion for summary judgment, the following facts are construed in the light most favorable to the plaintiffs, the non-moving parties. *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993); *Indemnity Ins. Co. v. Baker,* 1995 WL 373337, *1 (S.D.N.Y.1995). On or about June 11, 1984, plaintiffs each acquired one limited partnership interest in Triad IV Associates ("Triad IV"), a limited partnership, each paying $30,000.00 in cash and each separately executing a promissory note, dated June 11, 1984 ("June 1984 Notes"), in the amount of $270,000.00. The June 1984 Notes were secured by Letters of

Credit and were to mature on July 15, 1987. On several occasions between 1987 and 1991, the June 1984 Notes were renewed and the Letters of Credit were extended.

On October 10, 1991, FNYB acquired from Barclays' Bank by assignment for face value a $2,767,500.00 note made by Triad IV to Barclays' Bank (the "Barclays' Note") together with the security therefor which consisted of promissory notes made by nine investors, including plaintiffs, to Triad IV (the "Investor Notes"). Simultaneously with the assignment, the Barclays' Note was amended and restated by a new note, in favor of FNYB (the "FNYB Note"), payable on September 30, 1992. The Investor Notes were exchanged for new investor notes of similar tenor, and the Letters of Credit were amended in favor of FNYB. Plaintiffs' new investor notes, in favor of FNYB and dated September 30, 1991 (the "September 1991 Notes"), each provide:

> The Maker hereby acknowledges that this Note will be assigned by the Partnership to First New York Bank for Business ("FNYBB") as collateral for the payment of a certain loan being made by FNYBB to the Partnership of even date in the principal amount of $2,767,500.00 (the "FNYBB Loan"). The Maker agrees that as holder of this Note, FNYBB shall have all the rights and remedies afforded to a holder herein, as well as the right to demand payment in full of this Note in the event of a default by the Partnership under the FNYBB loan.

> It is expressly agreed that the entire principal sum of this Note, together with all accrued interest thereon, shall immediately become due payable (without demand for payment, notice of non-payment, presentment, protest, notice of protest, or any other notice, all of which are hereby expressly waived by Maker: (i) upon the default in the payment continued uncured for a period of five (5) days; or (ii) upon a default by the Partnership under the

---

1. On November 13, 1992, the New York Superintendent of Banking took possession of FNYB pursuant to N.Y. Banking Law § 606 and appointed the FDIC as receiver.

terms and conditions of the loan documents evidencing the FNYBB loan.

. . . . .

. . . . .

The Maker waives the right to interpose any defense, set-off or counterclaim of any nature or description in connection or with the payment of the principal hereof or interest hereon, in which the Payee or any other holder of this Note shall be an adverse party to the Maker.

In addition to the new investor notes and Letters of Credit, FNYB received estoppel letters from the investors to Triad IV, including plaintiffs. The estoppel letters, addressed to FNYB, provide:

This will confirm that the undersigned is duly indebted to Triad IV Associates pursuant to a promissory note of even date hereof in the principal sum of *$270,000.00* ... (the "Note"). As of the date hereof, the outstanding principal balance of the Note is *$270,000.00;* ... and the undersigned has no defenses, offsets or counterclaims which would affect the undersigned's obligation to make payment of principal or interest on the Note as and when due.

The Note is given by the undersigned in replacement of a like note of similar tenor dated April 15, 1991. It is our understanding that Triad IV Associates is simultaneously assigning our obligation under and pursuant to the terms of the Note to you as collateral security for a loan in the amount of $2,767,500.00 being made this day to Triad IV Associates. We agree to raise no defenses or offsets to our obligations under and pursuant to the Note and we make this statement knowing that you will rely upon the truth of its contents in concluding you loan transaction with Triad IV Associates.

On September 25, 1992, plaintiffs commenced this action in Supreme Court, Nassau County seeking a preliminary injunction to prohibit FNYB from attempting to collect on the September 1991 Notes and from drawing down on the Letters of Credit securing these notes. Pursuant to the direction of the Supreme Court, Nassau County, the let-

ters of credit were extended to January 29, 1993. By Order dated November 18, 1992, Justice Roberto denied plaintiffs' motion for a preliminary injunction. *See Fortunoff v. Triad Land Assocs., et. al.,* No. 92–24810 (N.Y.S.Ct., Nov. 18, 1992) (order denying preliminary injunction).

In May 1992, plaintiffs sued defendant TLA, the general partner of Triad IV, and the principals of defendant TLA in the Supreme Court of the State of New York, New York County on the ground that they fraudulently transferred Triad IV's assets in breach of their fiduciary duties. This action is currently pending.

On November 13, 1992, the New York Superintendent of Banking took possession of FNYB pursuant to N.Y. Banking Law § 606 and appointed the FDIC as receiver. In January 1993, pursuant to 12 U.S.C. § 1441(a)(1)(3), the case was removed from Supreme Court, Nassau County to this Court.

Defendant FDIC claims that Triad IV defaulted in the repayment of the FNYB Note. On January 12, 1993, defendant FDIC, as receiver for FNYB, drew down on the Letters of Credit securing the September 1991 Notes.

Plaintiffs contend that they are not liable on the September 1991 Notes because they have good and valid defenses to the September 1991 Notes. Plaintiffs argue that defendant FDIC is not entitled to collect on the September 1991 Notes and draw down on the Letters of Credit because FNYB knew that defendant TLA and/or its principals were engaging in fraud, inappropriately transferring Triad IV assets. Specifically, plaintiffs contend that defendant TLA and/or its principal, Irving Feldman ("Feldman"), caused $15 million or more of Triad IV monies to be diverted to himself, to his brother, Edward Feldman, and to companies owned by either Feldman or Feldman's son Louis. Plaintiffs further argue that between April 1991 and October 1991, FNYB, through its loan officers, came to have actual knowledge that the management of Triad IV was, through the acts of its General Partner, TLA, tainted by fraud, mismanagement and waste of partner-

ship assets. Plaintiffs argue that FNYB had actual knowledge of these alleged wrongdoings because, at the time that they made the loan, FNYB was in possession of certain financial records of Triad IV which allegedly indicated that defendant TLA and/or its principal had been transferring money to related parties. Thus, plaintiffs contend that FNYB is not a holder in due course. Plaintiffs further argue that defendant FDIC is not a holder in due course because defendant FDIC allegedly had knowledge of these wrongdoings at the time that defendant FDIC took over FNYB.

Plaintiffs also contend that the September 1991 Notes and estoppel letters do not waive their defenses because the promissory notes and estoppel letters were prepared by FNYB, its attorneys or TLA, were presented to plaintiffs "as is" for signature and contained "boilerplate" clauses.

Plaintiffs additionally argue that because defendant FDIC has not offered proof that Triad IV defaulted in repayment of the FNYB loan, such fact is controverted.

Defendant argues that the Court should grant summary judgment because plaintiffs' claims against the FDIC are barred under the doctrines of waiver, estoppel and law of the case, by the FDIC's "superpower" defenses pursuant to federal common law and the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), and because the FDIC is a holder in due course.

## DISCUSSION

I. *Standards for Granting Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56(c), courts may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of proof is on the moving party to show that there is no genuine issue of material fact, *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.

1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, at 93–95 (1983)). A party opposing a motion for summary judgment " 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* at 248, 106 S.Ct. at 2510 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224 (citing *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988)).

II. *The Doctrine of the Law of the Case*

■ Defendant FDIC contends that plaintiffs' claims are barred under the doctrine of the law of the case. Defendant FDIC argues that because Justice Roberto of the New York State Supreme Court held in a previous stage of litigation that "plaintiffs' will not be able to raise the defense of fraud against [FNYB]," *Fortunoff v. Triad Land Assocs., et. al.*, No. 92–24810 (N.Y.S.Ct., Nov. 18, 1992) (order denying preliminary injunction), plaintiffs cannot establish fraud as a defense against defendant FDIC.

Plaintiffs argue that Justice Roberto's Order is not dispositive under the doctrine of the law of the case because it was made without a hearing and without pre-trial discovery, and it was pursuant to a request for a preliminary injunction.

Under the law of the Second Circuit, "the law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir.1992) (quoting *Liona Corp. v. PCH Assocs.*, 949 F.2d. 585, 592 (2d Cir.1991) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988))). The doctrine of the law of the case "is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Id.* (quoting *Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992)).

The Supreme Court has stated that "[a] party ... is not required to prove his [or her] case in full at a preliminary-injunction hearing, ... and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at a trial on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) (citations omitted). Similarly, the Second Circuit has stated that " 'the decision of both the trial and appellate court on whether to grant or deny a temporary injunction does not preclude the parties in any way from litigating the merits of the case.'" *DiLaura*, 982 F.2d at 77 (quoting 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2962, at 630–31 (1973)). Moreover, under New York State law, a "denial of a motion for a preliminary injunction does not constitute the law of the case or an adjudication on the merits of the claim for a permanent injunction and, therefore, the issues must be tried as if no application for a preliminary injunction had been made." *Ratner v. Fountains Clove Road Apartments, Inc.*, 118 A.D.2d 843, 843, 500 N.Y.S.2d 329, 330 (2d Dept. 1986) (citations omitted).

Because Justice Roberto's Order, dated November 18, 1992, was pursuant to a motion for a preliminary injunction, the doctrine of the law of the case does not apply. Consequently, Justice Roberto's holding that "plaintiffs' will not be able to raise the de-fense of fraud against [FNYB]," *Fortunoff v. Triad Land Associates, et. al.,* No. 92–24810 (N.Y.S.Ct., Nov. 18, 1992) (order denying preliminary injunction), does not prohibit plaintiffs from establishing a claim of fraud against the defendant in the present action. Defendant's request for summary judgment based on the doctrine of the law of the case is therefore denied.

### III. *FDIC as a Holder in Due Course*

Defendant FDIC also argues that even if plaintiffs can make out a claim of fraud against TLA, FNYB is a holder in due course and not subject to the defense of fraud. Defendant FDIC further argues that under federal common law, defendant FDIC is presumed to be a holder in due course, regardless of state law requirements.

Plaintiffs, in contrast, argue that FNYB is not a holder in due course because it took the investor notes with notice of defenses and did not act in good faith. Plaintiffs further argue that defendant FDIC is not a holder in due course under federal common law, and thus defendant FDIC took the investor notes subject to all defenses.

A holder in due course is "a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." U.C.C. § 3–302(1). If a holder is given the status of holder in due course, it is free from certain defenses, including the defense of fraud in the inducement. *See* U.C.C. § 3–305.

In the present case, there is no dispute that FNYB took the instrument for value. The parties, however, dispute the notice and good faith requirements.

The Second Circuit has held that under New York law, a party has notice of a defense if it has "actual, subjective knowledge of the defense." *Indyk v. Habib Bank, Ltd.*, 694 F.2d 54, 56 (2d Cir.1982) (citing *United States v. Novsam Realty Corp.*, 125 F.2d 456, 457 (2d Cir.1942); *Chemical Bank v. Haskell*, 51 N.Y.2d 85, 92–93, 432 N.Y.S.2d 478, 411 N.E.2d 1339 (1980)). The existence of mere suspicious circumstances does not

constitute notice. *Id.* (citing *Chemical Bank,* 51 N.Y.2d at 93, 432 N.Y.S.2d 478, 411 N.E.2d 1339 (1980)).

In the present case, defendant FDIC claims that FNYB took the Fortunoff Notes in good faith and without knowledge of any defenses or claims. Plaintiffs, in contrast, argue that between April 1991 and October 1991, FNYB, came to have actual knowledge that TLA, the general partner of Triad IV, was engaging in fraud. Plaintiffs argue that FNYB knew of TLA's fraudulent activity because (1) FNYB had Triad IV's financial statements which revealed that TLA had been transferring money to entities related to its general partner, and (2) FNYB sought and obtained a "Lit–Lien" search of Triad IV, which would have revealed prior pending claims against Triad IV or TLA.

Because there exists a triable issue of fact as to FNYB's actual knowledge of defenses to the promissory notes, summary judgment on the basis that FNYB is a holder in due course is denied.

Defendant FDIC further argues that even if FNYB is not a holder in due course under state law, summary judgment is proper because FDIC has "federal holder in due course" status. Plaintiffs, however, argue that FDIC is not a federal holder in due course because it knew when it assumed receivership of FNYB that the notes were overdue and that plaintiffs were asserting defenses against the promissory notes.

Several Circuit Courts of Appeals have held that federal holder in due course status is confined to the insurers in their corporate capacity, rather than in their receivership capacity. *See Capitol Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In re 604 Columbus Ave. Realty Trust),* 968 F.2d 1332, 1352–53 (1st Cir.1992); *FDIC v. Laguarta,* 939 F.2d 1231, 1239 n. 19 (5th Cir.1991); *Beitzell & Co. v. FDIC (In re Beitzell & Co.),* 163 B.R. 637, 645 (Bankr.D.D.C.1993); *Gallant v. Kanterman (In re Kanterman),* 97 B.R. 768, 777 (Bankr.S.D.N.Y.), aff'd, 108 B.R. 432 (S.D.N.Y.1989). *But see Campbell Leasing, Inc. v. FDIC,* 901 F.2d 1244, 1249 (5th Cir.1990) (stating that the FDIC may enjoy federal holder in due course status whether acting in its corporate or receiver-

ship capacity); *Firstsouth, F.A. v. Aqua Constr., Inc.,* 858 F.2d 441, 443 (8th Cir.1988) (providing FSLIC–Receiver with federal holder in due course status). The Second Circuit has not reached this issue, nor has this Court. Because the Court has other grounds to grant defendant FDIC's motion for summary judgment, the Court will not reach the issue as to whether the FDIC, as receiver, has federal holder in due course status in the instant action.

### IV. *Defendant's Superpower Defenses—12 U.S.C. § 1823 and the Doctrine of D'Oench Duhme.*

 Defendant FDIC argues that their "superpower defenses" bar plaintiffs' claim that they were never supposed to pay on the promissory notes because the parties agreed that the promissory notes were to be paid from the proceeds of the limited partnership. Defendant FDIC also argues that plaintiffs' fraud claim is barred under the *D'Oench* doctrine and under the Federal Deposit Insurance Act of 1950, § 13(e), 64 stat. 889, as amended by the Financial Institution Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1823(e), because there is no evidence in the bank's records, including the promissory notes, letters of credit or the estoppel letters, indicating that there was looting or mismanagement of Triad IV.

Plaintiffs argue that 12 U.S.C. § 1823(e) and the *D'Oench* doctrine are not applicable to the present case because plaintiffs' claims are not based on an unwritten agreement modifying the notes but rather on the actual fraud committed by the General Partner in the administration of the partnership.

### A. The D'Oench Doctrine and its Statutory Counterpart, 12 U.S.C. § 1823(e)

 In *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court held that makers of a note are estopped from asserting against a federal corporation an alleged "secret agreement" outside the written terms of a note contained in the official banking rec-

ords.[2] In reaching its decision, the Court stated that where the maker of a note "len[ds] himself [or herself] to a scheme or arrangement whereby the banking authority ... [is] likely to be mislead," such a scheme or arrangement is barred as a defense against the FDIC. *Id.* at 460, 62 S.Ct. at 680. In essence, "the *D'Oench* doctrine prohibits the maker of a promissory note from asserting a defense based on any agreement that would tend to deceive the FDIC." *FDIC v. Betancourt*, 865 F.Supp. 1035 (S.D.N.Y.1994).

In cases subsequent to *D'Oench*, courts have expanded the *D'Oench* doctrine so that it "now applies in virtually all cases where a federal depositary institution regulatory agency is confronted with an agreement not documented in the institution's records." *Baumann v. Savers Federal Savings & Loan Ass'n*, 934 F.2d 1506, 1510 (11th Cir.1991), *cert. denied*, 504 U.S. 908, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992). As one judge has noted, the *D'Oench* doctrine is "expansive and perhaps startling in its severity." *Bowen v. FDIC*, 915 F.2d 1013, 1015 (5th Cir.1990).

Congress codified the *D'Oench* doctrine in the Federal Deposit Insurance Act of 1950, § 13(e), 64 stat. 889, as amended by the Financial Institution Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1823(e) ("Section 1823(e)").[3] Section 1823(e) of 12 U.S.C. similarly prohibits the use of secret, oral agreements against a federal corporation.

 Both the *D'Oench* doctrine and 12 U.S.C. § 1823(e) were designed to protect the FDIC from "secret agreements" that undermine the value of bank's assets. Specifically, *D'Oench* and 1823(e) were intended "to protect [the FDIC] from misrepresentations made to induce or influence the action of the FDIC, including misstatements as to the genuineness or integrity of securities in the portfolios of banks which it insures or to which it makes loans." *FDIC v. Betancourt*, 865 F.Supp. 1035, 1040 (S.D.N.Y.1994) (quoting *D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679). There are two main policies underlying 12 U.S.C. § 1823(e). First, Congress wanted to ensure that federal and state bank examiners could rely on a bank's records in evaluating the worth of the bank's assets. As the Supreme Court has noted "neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." *Langley*, 484 U.S. at 91–92, 108 S.Ct. at 401. Second, Congress enacted § 1823(e) to "ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *See id.*

Section 1823(e) of 12 U.S.C. specifically provides that "no agreement which tends to diminish or defeat the interest of the Corporation or any asset acquired by it ... shall be valid against the corporation unless such agreement" meets four requirements. 12 U.S.C. § 1823(e). First, the agreement must be in writing. *Id.* Second, the agreement must be executed by the bank and any party claiming an adverse interest thereunder contemporaneously with the acquisition of the asset by the bank. *Id.* Third, the agreement must be approved by the board of directors or the loan committee of the bank, and it must be recorded in the minutes of the board or committee. *Id.* Finally, the written agreement must be kept continuously, from the time of its execution, as an official record of the bank. *Id.*

 An agreement that meets the four requirements of 12 U.S.C. § 1823(e)

---

2. For a general discussion on the *D'Oench* doctrine and 12 U.S.C. § 1823(e), see Chris Atkinson, Note, *Defensing the Indefensible: Exceptions to D'Oench and 12 U.S.C. § 1823(e)*, 63 Fordham L.Rev. 1337 (1994–95).

3. Although the *D'Oench* doctrine and § 1823(e) are generally applied together, section 1823(e) is broader than the *D'Oench* doctrine. The *D'Oench* doctrine is a "rule of equitable estoppel and applies to any defense that a borrower may assert where the borrower participated in a scheme tending to deceive bank examiners. *Beener v. LaSala*, 813 F.Supp. 303, 307 n. 3 (D.N.J.1993). Section 1823(e), however, applies to any "agreements" between the borrower and the bank, *id.*, and "agreement" been interpreted very broadly. *See Langley v. FDIC*, 484 U.S. 86, 93, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987).

prevails even if the FDIC did not know of the agreement, and an agreement that does not meet the four requirements fails even if the FDIC knew of the agreement. *Id.* 484 U.S. at 95, 108 S.Ct. at 403. Section 1823(e) protects the FDIC in its corporate capacity as well as in it receivership capacity. *See FDIC v. Giammettei,* 34 F.3d 51, 55 (2d Cir.1994) ("In 1989, after the Supreme Court decided Langley, Congress further enlarged the scope of the doctrine by amending § 1823(e) to extend its protections to assets acquired by the FDIC through appointment as a receiver for an insolvent financial institution.").

■■■ While neither the *D'Oench* doctrine nor 12 U.S.C. § 1823(e) prevents plaintiffs from asserting affirmative claims or defenses that do not depend on "agreements," *see Garrett v. Commonwealth Mortgage Corp.,* 938 F.2d 591, 595 (5th Cir.1991) (citing *Langley v. FDIC,* 484 U.S. 86, 93–4, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987); *FDIC v. McClanahan,* 795 F.2d 512, 515 (5th Cir.1986)), court have interpreted the term "agreement" very broadly. *Beitzell & Co. v. FDIC (In re Beitzell),* 163 B.R. 637, 647 (Bankr.D.D.C. 1993); *see, e.g., Langley v. FDIC,* 484 U.S. 86, 90–93, 108 S.Ct. 396, 400–02, 98 L.Ed.2d 340 (1987) (interpreting "agreement" to include all conditions to the parties' performance of the bargain); *FDIC v. Giammettei,* 34 F.3d 51, 58 (2d Cir.1994) (holding that an implicit covenant of "good faith and fair dealing" constitutes an "agreement" under 12 U.S.C. § 1823(e)). The Supreme Court has noted that the term "agreement" in § 1823(e) includes representations, warranties and fraudulent promises. *Langley,* 484 U.S. at 93, 108 S.Ct. at 402.

Pursuant to the *D'Oench* doctrine and 12 U.S.C. § 1823, courts have barred, as forbidden agreements, a variety of claims and defenses arising from defects in contract formation and alterations of the terms of the contract. For example, court have barred the defenses of fraudulent inducement, accord and satisfaction, and breach of an express warranty. *See, e.g., Langley,* 484 U.S. at 93, 108 S.Ct. at 402 (prohibiting petitioner from asserting as a defense to payment of a note certain warranties made at the time the note

was executed regarding the size of the land purchased and the mineral acres available); *Giammettei,* 34 F.3d at 59 (proclaiming that breach of the implied covenant of good faith and fair dealing is an agreement subject to the four requirements of 12 U.S.C. § 1823(e)), *Blackman v. United Cap. Invest., Inc.,* 12 F.3d 1030, 1032 (11th Cir.1994) (barring makers of a note from asserting that they were induced into signing the note by misrepresentations regarding the financial status of the partnership); *Betancourt,* 865 F.Supp. at 1041–44 (barring an unwritten, side agreement regarding partial payment as payment in full and proclaiming that an accord and satisfaction must comply with the 12 U.S.C. § 1823(e)); *Simms v. Biondo,* 816 F.Supp. 814, 824–25 (E.D.N.Y.1993) (barring a defense that makers were induced to sign a note on the basis of an oral agreement concerning the value of property). Courts have similarly prohibited, as forbidden agreements, several tort claims, including claims of conversion, fraud, negligent misrepresentation, unjust enrichment, negligence and breach of fiduciary duty. *See, e.g., Giammettei,* 34 F.3d at 57 (proclaiming that defendants may only raise conversion defense if the agreement in issue satisfies the requirements of 12 U.S.C. § 1823(e)); *RTC v. Allen,* 16 F.3d 568, 574 (4th Cir.1994) (allegations of negligence and breach of fiduciary duty regarding an escrow account were precluded under *D'Oench* doctrine and § 1823(e)); *Inn At Saratoga Associates v. FDIC,* 856 F.Supp. 111, 117–18 (N.D.N.Y.1994), *aff'd,* 60 F.3d 78 (2d Cir.1995) (barring plaintiff's tort claims of negligent misrepresentation and fraud pursuant to 12 U.S.C. § 1823(e) because the tort claims were related to the underlying loan transactions); *Winterbrook Realty, Inc. v. FDIC,* 820 F.Supp. 27, 32 (D.N.H.1993) (barring claims for unjust enrichment and quantum meruit under the *D'Oench* doctrine). Court have further interpreted the term "agreement" to include an obligation of good faith and fair dealing and an obligation to act as a fiduciary. *See, e.g., Giammettei,* 34 F.3d at 59 (interpreting "agreement" to include an obligation of good faith and fair dealing); *Clay v. FDIC,* 934 F.2d 69, 72 (5th Cir.1991) (proclaiming that duty to manage loan pru-

dently is a condition falling within definition of "agreement").

### B. Applying the D'Oench Doctrine and 12 U.S.C. § 1823(e) to the Present Case

Under both the *D'Oench* doctrine and 12 U.S.C. § 1823(e), plaintiffs' contention that their debts were to be paid out of partnership assets is barred. Any such agreement is a "secret" agreement, in that neither the FNYB nor the FDIC knew of this agreement. Because it does not meet any of the four requirements of 12 U.S.C. § 1823(e), any such promise regarding repayment of the promissory note is unenforceable.

Plaintiffs' fraud claim is similarly barred. Because the courts have broadly defined "agreement" in 12 U.S.C. § 1823(e) to include defenses to contract formation and certain tort claims, plaintiffs' fraud claim is an "agreement" subject to the four requirements of 12 U.S.C. § 1823(e). Plaintiff's fraud claim, however, does not meet the four requirements of § 1823(e). There is no evidence in the bank's records, including the promissory notes, letters of credit or the estoppel letters, indicating that there was looting or mismanagement of Triad IV. Consequently, plaintiffs' claim based on fraud also is barred as against defendant FDIC.

In summation, defendant's request for summary judgment on the ground that the *D'Oench* doctrine and 12 U.S.C. § 1823(e) bar plaintiffs' contention that the promissory notes were to be paid from the proceeds of the limited partnership is granted. Defendant's request for summary judgment on the ground that the *D'Oench* doctrine and 12 U.S.C. § 1823(e) bar plaintiffs' contention that the promissory notes are unenforceable because of the mismanagement and looting by the general partner of Triad IV is similarly granted.

### V. *The Doctrines of Waiver and Estoppel*

█ Defendant FDIC further contends that plaintiffs expressly waived their right to allege any defense against their obligation to pay when they executed the September 1991 Notes and the accompanying estoppel letters to FNYB. Defendant FDIC argues that plaintiff's "not only specifically agreed not to raise any defenses, but affirmatively stated that they were duly obligated to Triad IV Associates, free from any defenses." Memorandum of Law in Support of the FDIC's Motion for Summary Judgment, at 10.

Plaintiffs argue that they did not waive their defenses, particularly the defense of fraud, because the relevant clauses in the promissory notes and the estoppel letters were general, and unspecific merger clauses—boilerplate clauses. Plaintiffs additionally contend that defendant TLA prepared the notes and estoppel letters and urged the plaintiffs to sign them after "quickly [passing the] loan documents past plaintiffs without any opportunity for negotiation or input."

█ Under the law of the Second Circuit, "to bar a defense of fraudulent inducement ..., a guarantee must contain explicit disclaimers of the particular representations that form the basis of the fraud-in-the-inducement claim." *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 316 (2d Cir.1993) (citing *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729 (2d Cir.1984)).

In *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959), the New York State Court of Appeals similarly held that a general merger clause is insufficient to bar a defense of fraud in the inducement. In *Danann*, the plaintiff, a purchaser of a lease on a building, sought damages for fraud, claiming that it was induced to enter into the contract by the defendant's false representations regarding the operating expenses of the building and the profits to be derived from the investment. *Danann*, 5 N.Y.2d at 319, 184 N.Y.S.2d at 600, 157 N.E.2d at 598. The contract, however, stated that " '[t]he Seller has not made ... any representations as to the ... expenses [or] operation ... [of] the aforesaid premises ... and the Purchaser hereby expressly acknowledges that no such representations have been made....' " *Id.* at 320, 184 N.Y.S.2d at 601, 157 N.E.2d at 598. The contract further stated that all of the parties' agreements were merged in the contract, " 'neither party relying upon any statement or representation, not embodied in this con-

tract, made by the other.'" *Id.* In reaching its decision to exclude parol evidence to show fraud in the inducement, the New York Court of Appeals reasoned that the "plaintiff has in the plainest language announced and stipulated that it is not relying on any such representations as to the every matter as to which it now claims it was defrauded." *Id.*, at 320, 184 N.Y.S.2d at 602, 157 N.E.2d at 599. The New York Court of Appeals further noted that the plaintiff made a representation that it was not relying on specific representations when in fact it was, and thus also is guilty of fraud. *Id.* at 323, 184 N.Y.S.2d at 604, 157 N.E.2d at 600. Because the language of the clause was so specific, clearly stating that plaintiff was not relying on defendants representations regarding expenses or operation, the New York Court of Appeals held that plaintiff had no action against the defendants for damages for fraud. *Id.*

In *Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985), the New York Court of Appeals similarly held that officers and directors of a company could not claim that they were fraudulently induced to sign a guarantee because the guarantee recited that it was "absolute and unconditional." In that case, plaintiff, Citibank, and four other banks provided United Department Stores ("United"), of which defendants were officers and directors, with a $15,000,000 line of credit. *Id.* at 92, 495 N.Y.S.2d at 310, 485 N.E.2d at 975. After United defaulted, the parties discussed restructuring the indebtedness as a term loan guaranteed by the defendants and providing United with an additional line of credit. *Id.* On August 10, 1984, the term loan transaction closed but the additional line of credit was never funded. *Id.* The guarantee to the loan term stated that the guarantee was "absolute and unconditional . . . irrespective of (i) any lack of validity . . . of the . . . Restated Loan Agreement . . . or any other agreement or instrument relating thereto" or "(vii) any other circumstance which might otherwise constitute a defense" to the guarantee." *Id.* at 95, 495 N.Y.S.2d at 312, 485 N.E.2d at 977. In reaching its decision to bar consideration of the fraud defense, the New York Court of Appeals noted that the guarantee was a "multimillion dollar personal guarantee proclaimed by defendants to be "absolute and unconditional," and it was executed after "extended negotiations between sophisticated business people." *Id.* While the Court of Appeals noted that it was "not the explicit disclaimer present in *Danann,* the substance of defendants' guarantee forecloses their reliance on the claim that they were fraudulently induced to sign the guarantee by the banks' oral promise of an additional line of credit." *Id.* The Court of Appeals further noted that "[t]o permit [the defense of fraud] would in effect condone defendant's own fraud in 'deliberately misrepresenting [their] true intention' when putting their signature to their "absolute and unconditional" guarantee." *Id.*

■ In *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310 (2d Cir.1993), the Second Circuit, relying on these leading New York Court of Appeal cases, held that "the mere general recitation that a guarantee is "absolute and unconditional" is insufficient under *Plapinger* to bar a defense of fraudulent inducement." *Yanakas,* 7 F.3d at 316. The Second Circuit declared that "the touchstone is specificity." *Id.*

In *Yanakas,* the guarantee clause in issue was in a preprinted form and stated that Yanakas "absolutely and unconditionally guarantees" all "obligations and liabilities of Borrower to Bank or another or others," and that the "guarantee shall be a continuing, absolute and unconditional guarantee of payment regardless of the validity, regularity or enforceability of any of said obligations." In holding that this clause lacked specificity and thus did not bar a defense of fraud, the Court reasoned that the preprinted form was not prepared by Yanakas but by the plaintiff, and that there was no evidence that the guarantee was the product of any negotiations between the parties. The Court next addressed what it considered the most important factor—that "the Yanakas Guarantee does not purport to waive any defenses to its own validity." The Court noted that the guarantee "contained no disclaimer as to the validity, regularity, or enforceability of the Guarantee itself" and did not contain "the blanket disclaimer of the type found in *Plapinger* as to 'any other circumstance which

might otherwise constitute a defense.'" Because the language of the guarantee was not specific enough under New York law, the Court held that it did not bar guarantor's affirmative defense of fraudulent inducement.

In the present case, plaintiffs expressly waived their right to allege a defense of fraud. In plaintiffs' September 1991 promissory note, plaintiffs stated that "[t]he maker waives the right to interpose any defense, set-off or counterclaim of any nature or description in connection with the payment of the principal hereof or interest hereon, in which the Payee or any other holder of this Note shall be an adverse party." Plaintiffs also executed estoppel letters, dated September 30, 1991, that state:

> This will confirm that the undersigned is duly indebted to Triad IV Associates pursuant to a promissory note of even date hereof in the principal sum of $270,-000.00.... [T]he undersigned has no defenses, offsets or counter claims would affect the undersigned's obligations to make payment of principal or interest on the Note as and when due.

> The Note is given by the undersigned in replacement of a like note of similar tenor dated April 15, 1991. It is our understanding that Triad IV Associates is simultaneously assigning our obligations under and pursuant to the terms of the Note to you as collateral security for a loan in the amount of $2,767,500.00 being made this day to Triad IV Associates. We agree to raise no defenses or offsets to our obligations under and pursuant to the Note and we make this statement knowing that you will rely upon the truth of its contents in concluding your loan transaction with Triad IV Associates.

Plaintiffs argue that the clauses waiving the plaintiffs' defenses are general, and unspecific merger clauses—boilerplate clauses. Plaintiffs also argue that TLA quickly passed the document passed plaintiffs without any opportunity for input or negotiation, and thus plaintiffs were not afforded an opportunity to waive, or be estopped from asserting any claim.

Under the law of the Second Circuit, the inquiry before this Court is whether the whether the language of the waiver clause in the promissory notes and in the estoppel letters is specific enough to preclude the plaintiffs from asserting their fraud claim in the instant action. *Yanakas*, 7 F.3d at 316 (proclaiming that the "touchstone is specificity").

The language in both the Promissory Notes and the estoppel letters is clear and unambiguous. In both the promissory notes and the estoppel letters, plaintiffs specifically state that they will not raise any defenses to their obligation to pay under the promissory notes. Moreover, in the estoppel letter, plaintiffs affirmatively state that they were duly obligated to Triad IV, free from any defenses. Plaintiffs also acknowledge their understanding of the assignment to FNYB, and they acknowledge that FNYB was relying upon the truth of the statements in the estoppel letters in making the loan to Triad IV. The language in the estoppel clause is very specific and certainly contemplates the type of fraud alleged and waived here.[4]

Plaintiffs are sophisticated business people. Although plaintiffs claim that TLA gave plaintiffs the documents to sign without providing an opportunity for negotiations, plaintiffs had signed similar waivers on at least four prior occasions, and thus it is clear that they were familiar with this type of clause. Moreover, since May 1991, plaintiffs were aware that Barclays' Bank would not renew

---

**4.** In *Marine Midland Bank, N.A. v. CES/Compu-Tech, Inc.*, 147 A.D.2d 396, 537 N.Y.S.2d 818 (N.Y.S.Ct.1989), the court considered the effect of a clause that stated: "[CES] waives ... the right to assert defense, setoffs and counterclaims ... in any action or proceeding in any court arising on, out of, under, by virtue of, or in any way relating to this Note or the transaction contemplated hereby." *Id.* at 397, 537 N.Y.S.2d at 819. The court held that the parties were barred from asserting an oral modification because the clause was sufficiently specific. *Id.* In reaching its decision, the court proclaimed: "To permit a contrary result would be to condone, in effect, defendant president's own conduct in deliberately misrepresenting his intention when executing an a agreement which purports to 'set forth the entire understanding of the parties.'" *Id.* at 398, 537 N.Y.S.2d at 820 (quoting *Citibank v. Plapinger*, 66 N.Y.2d at 95, 495 N.Y.S.2d at 309, 485 N.E.2d at 974).

the Barclays' Note, and plaintiffs had at least four months notice that Triad IV was pursing other banks to take over the Barclays' Note. Thus the negotiations were not rushed.

Because the language of plaintiffs' promissory notes and estoppel letters is sufficiently specific to bar plaintiffs' defense of fraud as a matter of law, defendant FDIC's request for summary judgment based on the doctrines of waiver and estoppel is granted.

### Conclusion

Based on the foregoing, defendant's motion for summary judgment is granted, and plaintiffs' action against defendant FDIC is dismissed with prejudice. Defendant FDIC is entitled to the principal sum of $270,000 on each note plus interest, expenses, court costs and attorneys' fees as provided in the promissory agreements.

SO ORDERED